UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

SETH FEUER and SUSANN FEUER,

                              Plaintiffs,

    -against-

CORNERSTONE HOTELS CORP. d/b/a SUN N
SAND HOTEL and OCEAN BREEZE MOTEL,
and NAEEM BUTT in his individual and
professional capacity,

                            Defendants.

----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14-CV-5388 (JFB)(SIL)

**LOCKE, Magistrate Judge:**

       Presently before the Court in this wage and hour litigation, brought pursuant
to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New
York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.,* on referral from the Honorable
Joseph F. Bianco, are Plaintiffs', Seth Feuer and Susann Feuer (collectively as
"Plaintiffs" or the "Feuers"), motion for partial summary judgment pursuant to
Federal Rule of Civil Procedure 56 ("Plaintiff's Motion" or "Motion for Partial
Summary Judgment"), and Defendant Naeem Butt's ("Defendant" or "Butt") Motion
to Amend his Answer and the Pleadings pursuant to Federal Rule of Civil Procedure
15 ("Defendant's Motion" or "Motion to Amend").  *See* Docket Entries ("DE") [55, 61].
Plaintiffs petition the Court to grant summary judgment against Defendants,
Cornerstone Hotels Corp., doing business as Sun-N-Sand Hotel and Ocean Breeze
Motel ("Cornerstone"), and Butt, in his individual capacity, (collectively, where

appropriate, as "Defendants"), and enter an Order finding Cornerstone to be a covered employer under the FLSA, Butt to be individually liable as an employer, Defendants to be liable for failing to provide wage notices and statements under the NYLL, and striking Defendants' second and ninth affirmative defenses of good faith and a lack of willfulness.   *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgement ("Pl. Mem."), DE [56].   In response, Defendant Butt filed a Motion to Amend his Answer, Interrogatories, and Discovery Responses.   *See* Motion to Amend/Correct/Supplement ("Def. Mot. to Amend"), DE [61], which Plaintiffs opposed in their Reply.   *See* Reply, DE [64].   Subsequently, Defendant then submitted a letter ("Defendant's Letter") to the Court requesting that his Motion to Amend be also construed as a cross motion for summary judgment seeking dismissal of the Complaint on jurisdictional grounds.   *See* Letter from Naeem W. Butt to Judge Locke dated 4/20/2017 ("Def. Letter"), DE [70].   Plaintiffs again opposed, but asserted that no further briefing was necessary, as they had addressed all of the arguments raised in Defendant's Letter in their Reply papers.   *See* Letter Motion to Withdraw, DE [74]. The District Court referred both motions to this Court for report and recommendations.   Accordingly, for the reasons set forth below, the Court respectfully recommends that Plaintiffs' Motion be granted in its entirety and that Defendant's Motion to Amend and cross motion for summary judgment be denied in its entirety.

## I.   Relevant Factual Background

Cornerstone is a corporation with a principal place of business located at 52 Longview Road, Southampton, New York.   *See* Transcript of Deposition of Defendant

Naeem Butt ("Butt Tr.") at 12:8-13:6, 14:10-15:3; Answer ("Ans."), DE [11] ¶¶ 11, 14. Since April 2012 through to the present, Cornerstone has operated a motel at that location that is presently named the Sun-N-Surf, but has previously done business under the name Ocean Breeze. *See* Butt Tr. at 12:8-13:6, 14:10-15:3, 16:20-16:22, 18:4-18:6. 20:5-20:9; Ans. ¶ 14. Defendant Butt is the owner, president, chief executive officer, and controlling stockholder of Cornerstone. Butt Tr. at 15:13-16:10; Ans. ¶ 15; Defendant's Responses to Plaintiffs' Second Request for Production of Documents, 4/16/16, ("Def. Production Reponses"), ¶ 6. The Feuers worked at the motel changing and cleaning the guest rooms and doing some minor maintenance and landscaping. *See* Butt Tr. at 64:12-18, 68:9-19. As Cornerstone's owner, Butt supervised all employees at the motel, including Plaintiffs, and determined their rates and methods of pay as well as their duties and hours. Butt Tr. at 61:8-64:18, 68:6-68:19, 109:2-109:20. Butt also possessed the power to hire and fire the Feuers. *See id.* at 62:22-63:8, 108:23-108:25; Deposition of Plaintiff Seth Feuer ("Seth Feuer Tr.") at 36:24-37:2.

Defendants employed Plaintiffs from on or about May 1, 2014 through approximately September 8, 2014. Butt Tr. at 59:6-60:15, 65:12-65:15; Seth Feuer Tr. at 12:11-12:20, 53:10-53:14; Susann Feuer Tr. at 25:13-25:19. Defendants paid Plaintiffs in cash at all times. Butt Tr. at 87:15-87:19.

Defendants did not provide Plaintiffs with a wage statement on each payday that would have explained their rates of pay, the number of hours for which they were being paid, and the total pay that they were receiving. Butt Tr. at 87:20-87:25,

103:24-104:3; Defendant Butt's Responses to Plaintiffs' First Set of Requests for Admission to Defendants ("Admissions"), DE [55-12] ¶¶ 15, 16.  Defendants also did not provide Plaintiffs with a wage notice at the time of hire that would have explained their rates of pay, the day on which their pay would be issued, and any and all deductions, such as housing, that were being taken out of their gross pay.  Butt Tr. at 107:25-108:5; Admissions ¶ 16.

Defendant Butt admits that he has been involved with the hotel business since 1991, including in roles in which he supervised employees.  Butt Tr. at 40:16-42:7, 69:23-69:25, 125:7-125:25, 132:20-133:9.  Nevertheless at no time did he seek guidance from outside counsel or other experts concerning whether Cornerstone's compensation practices were in compliance with applicable federal and state wage and hour laws and regulations. Butt Tr. at 106:13-106:16; Defendant's Responses to First Interrogatories ("Def. Response to Interogs."), DE [55-11], ¶¶ 8-9.  Nor did he ever seek guidance from the United States Department of Labor, New York State Department of Labor, or any similar federal, state, or local agency concerning compensation of employees.  *See* Butt Tr. at 106:24-107:17; Def. Response to Interogs. ¶ 9.

## II.  PROCEDURAL HISTORY

By means of the Complaint, Plaintiffs commenced this action on September 15, 2014 alleging violations of the FLSA and NYLL. *See* Complaint ("Compl."), DE [1]. Defendants, then represented by counsel, filed an answer in which they made factual and legal admissions conceding the applicability of the FLSA to Plaintiffs' claims

against Cornerstone and the employee-employer relationship between Plaintiffs and Defendants. *See* Ans. ¶¶ 8, 9. On January 7, 2015, pursuant to Federal Rule of Civil Procedure 16 ("Rule 16"), the Court entered an initial scheduling order setting a deadline to amend the pleadings of April 1, 2015 and for all discovery to be completed by May 5, 2015. *See* DE [14]. On March 16, 2015, the Court granted defense counsel's motion to withdraw, and discovery was stayed for thirty days in order for Butt to find a new attorney for himself and Cornerstone. *See* 3/16/2015 Order. On April 20, 2015, the Court explained to Defendant that although he could proceed *pro se* with respect to his individual liability he could not represent Cornerstone, a corporation, which must appear through an attorney. *See* 4/20/2015 Order, DE [21]. The Court warned Defendant Butt that a failure to obtain new counsel for Cornerstone risked the corporation being held in default and having a default judgment entered against it. *See id.* On June 4, 2014, Cornerstone again failed to appear through counsel, and the Court entered an Amended Scheduling Order for Butt, who continued to appear *pro se,* that set August 21, 2015 as the deadline by which to amend the pleadings and October 30, 2015 for the close of fact discovery. *See* Amended Scheduling Order DE [24].[1]

---

[1] The Court notes that it did grant Plaintiffs' timely application to extend the deadline to amend the Complaint to a date 30 days after their deposition of Defendant for the specific purpose of ensuring that any unknown related individual or corporate defendants revealed through that deposition could be properly joined in this action. *See* 12/17/2015 Electronic Order. Defendant made no similar request to extend the deadline with respect to the Answer. As Plaintiffs deposed Butt on September 30, 2015, the extended period to amend would have expired on November 30, 2015 even were the Court's order construed to have applied to both parties' pleadings. Additionally, the Court also recognizes that specific derivative discovery arising out of Defendant's deposition was permitted and ordered over the course of 2016. *See* 5/4/2016 Amended Scheduling Order, DE [43]. Nevertheless, all discovery was definitively closed by the Court's 8/25/2016 Order, which set September 15, 2016 as the deadline to commence dispositive motion practice. *See* DE [50].

No attorney has ever entered a notice of appearance on behalf of Cornerstone since the Court granted the motion to withdraw.  Plaintiff has not filed a request for a Certificate of Default or a Motion for a Default Judgment against Cornerstone.

## III.  DEFENDANT'S MOTION TO AMEND

### A.  <u>Present Motion</u>

On November 11, 2016, Defendant moved to amend the Answer and certain responses to interrogatories and document requests to reflect that Cornerstone had income for 2014 of $255,786.  *See* Def. Mot. to Amend.  Were the Court to grant that application, Butt then also seeks summary judgement based on a lack of subject matter jurisdiction due to the FLSA's requirement that, for the statute to apply, a corporate defendant must have at least $500,000 is gross sales.  *Id.* (citing 29 U.S.C. § 206(a)); Def. Letter.

In their Reply, Plaintiffs counter that the Court should not permit Butt to amend the Answer or his discovery responses as:

(1) Undue prejudice would necessarily accrue as Plaintiffs have premised their prosecution of this case on Defendants having made judicial admissions regarding applicability of the FLSA,

(2) Defendants' prior refusal to participate in discovery on the specific factual issues surrounding their admissions suggests that the amendments are in bad faith, and

(3) The prejudice such amendments creates is exacerbated by the procedural posture of the case.

*See* Reply.  Further, Plaintiffs argue that even were the Court inclined to allow such an amendment, Summary Judgment in Defendant's favor is nonetheless inappropriate, because Plaintiffs would be entitled to additional discovery relating to

Cornerstone's income and finances, which would ultimately establish FLSA liability. *See id.* The Feuers further argue that this additional discovery should be at Defendant's expense. *See id.*

## B. <u>Legal Standard</u>

Federal Rule of Civil Procedure 15(a)(2) provides that outside the time period in which a party may amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In general, this means that a motion to amend should be granted unless there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir. 1995) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 228 (1962)); *see Alexandre v. Town of Hempstead,* 275 F.R.D. 94, 97 (E.D.N.Y. 2011) (citing *Foman,* 371 U.S. at 182, 83 S. Ct. at 228). However, delay alone, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981) (granting leave to amend after discovery was closed, but where there was no undue prejudice to the defendants and "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants"); *accord Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir. 1993); *Alexandre,* 275 F.R.D. at 97-98.

This analysis is altered, however, where, as here, a court has issued a scheduling order pursuant to Rule 16. *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause [under rule 16(b) ]."). Once such an order is in place, the schedule may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Though cognizant of Defendant's *pro se* status, the Court notes, "'while pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro se*s, have an obligation to comply with court orders[, and] [w]hen they flout that obligation they, like all litigants, must suffer the consequences of their actions.'" *McGee v. Pallito*, 10-CV-11, 2013 WL 5372328, at *11 (D. Vt. Sept. 24, 2013) (quoting *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir. 1988)). Consequently, although *pro se* litigants are afforded leniency in the context of Rule 16, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), a district court does not abuse its discretion by denying a *pro se* litigant's motion to amend if the *pro se* litigant cannot show good cause. *See, e.g., Smith v. New York City Dep't of Educ.*, 524 F. App'x. 730, 733 (2d Cir. 2013) (summary order) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007)) (holding that the district court did not abuse its discretion in denying *pro se* plaintiff's application for leave to amend complaint based on allegedly wrongful acts that occurred after filing of original complaint when plaintiff, without a showing of good cause, first

8

sought leave six months after deadline for amended pleadings, one month after deadline for fact discovery, and two weeks after defendants filed their motion for summary judgment).

The Second Circuit has explained that good cause "depends on the diligence of the moving party," *Parker,* 204 F.3d at 340, as well as "other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the nonmoving party]." *Kassner,* 496 F.3d at 244. In determining prejudice in this context, courts consider, among other factors, whether the proposed amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Block,* 988 F.2d at 350.

## C. **Discussion**

As the Defendant has failed to provide any good cause as would allow the Court to grant his Motion to Amend, and as the motion itself is made in bad faith and would cause substantial prejudice to Plaintiffs, the Court respectfully recommends it be denied in its entirety.[2]

---

[2] In his memorandum, Defendant Butt cites to a solitary case, *Schanbarger v. Hudson Falls*, to argue that his motion to amend should be granted. *See* Defendant's Memorandum in Support ("Def. Mem."), DE [68], at 1; *Schanbarger v. Hudson Falls*, 88-CV-1208, 1989 WL 111012, at *8 (N.D.N.Y. Aug. 25, 1989) (denying *pro se* plaintiff's motion to strike defendants' amendments to their answer and discovery responses). However, the case is inapposite as it makes no reference to a scheduling order and, therefore, does not analyze Rule 16's requirement that the moving party show good cause once the relevant court-ordered deadline to amend the pleadings has passed. *See Schanbarger,* 1989 WL 111012, at *8. Additionally, although it does reference Rule 15, noting "leave to amend the pleadings shall be freely granted," *Schanbarger* contains no analysis of the Rule 15 factors at issue in the present case, specifically bad faith or substantial prejudice. *See id.* Finally, *Schanbarger* is procedurally distinguishable as the motion to amend there at issue was filed within months of the case commencing

### 1.      No Good Cause Shown

The Court first turns to whether Defendant has shown good cause as would allow amendment of the pleadings after the deadline that was set in the Court's Amended Scheduling Order has passed.  When a party seeks to amend the pleadings after the deadline imposed by a scheduling order, "the Court must balance the Rule 15(a) standard against the Rule 16(b) mandate that a scheduling order 'shall not be modified except upon a showing of good cause.'" *Hadid v. City of New York*, 182 F. Supp. 3d 4, 9 (E.D.N.Y. 2016) (quoting *Grochowski v. Phoenix Const.,* 318 F.3d 80, 86 (2d Cir. 2003)) (citing Fed. R. Civ. P. 15(a), 16(b)).  "The standards of Rule 16(b) *must be met first* and cannot 'be short-circuited by an appeal to those of Rule 15.'" *Nairobi Holding Ltd. v. Brown Brothers Harriman & Co.,* 02-1230, 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006) (citing *Parker* and quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992)) (emphasis added).  The moving party must put forth "good cause," which entails showing that "despite its having exercised diligence, the applicable [amendment] deadline could not have been reasonably met." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.,* 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012).  Therefore, "when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline," no good cause justifies granting such an untimely request.  *Id.*   Additionally, a party's present or former *pro se* status does not function as a substitute for an actual showing of "good cause."  *See*

---

and before discovery closed.  *See id.* at *1, 8, DE [1, 40].  Accordingly, the Court finds Butt's reliance on this case unavailing.

*Valentin v. City of Rochester*, 11-CV-6238, 2016 WL 5661729, at *7 (W.D.N.Y. Sept. 30, 2016) (noting that a party's "*pro se* status does not relieve him of compliance with Rule 16(b)'s diligence requirement.") (citing *Li v. Morrisville State Coll.*, 07-CV-1302, 2010 WL 2735711, at *4 n.5 (N.D.N.Y. 2010) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)), *aff'd*, 434 F. App'x. 34 (2d. Cir. 2011)).

The FLSA's wage and hour requirements apply "pursuant to either 'individual' or 'enterprise' coverage," the former encompassing individuals "engaged directly in interstate commerce or in the production of goods for interstate commerce" and the latter, "substantially broaden[ing] the scope of [FLSA]," encompassing "any employee of an enterprise engaged in interstate commerce." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 12-CV-5565, 2016 WL 4179942, at *3 (E.D.N.Y. Aug. 5, 2016) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 n.8 (1985)).  The FLSA's enterprise liability covers entities that: (1) perform related activities "for a common business purpose"; (2) have "employees engaged in commerce or in the production of goods for commerce, or ... employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (3) have an "annual gross volume of sales made or business done [ ] not less than $500,000." 29 U.S.C. § 203(r)–(s).

The substance of the amendments Defendant seeks to make to his Answer and other related discovery materials is the present assertion that Cornerstone had gross sales below $500,000, exempting it from the third element of enterprise liability under the FLSA – a fact that is in direct contradiction with his previous disclosures

11

and admissions. *See* Def. Mot. to Amend. In support of this position, Butt includes a partial, unsigned copy of his 2014 tax returns and attempts to excuse the lateness of his disclosure based upon his status as a *pro se* defendant unfamiliar with the FLSA. *See* Def. Letter; Amended Response to Plaintiffs' Request for Production of Documents ("2014 Tax Return"), DE [61-6]. The Court rejects this explanation.

Throughout the three years this litigation has been pending, the relevance of this information has been readily apparent to Defendant, as he and his then counsel repeatedly affirmed that Cornerstone was subject to the FLSA because its business exceeded the statutory threshold. *See, e.g.,* Ans. ¶¶ 8, 9 (conceding all factual assertions in the Complaint substantiating enterprise liability under the FLSA); Def. Production Responses ¶¶ 18, 19 (refusing to turnover financial documentation related to gross sales and income on grounds that it is irrelevant in light of the Answer having conceded the applicability of the statute). Moreover, Defendant's unsigned 2014 tax return in support of his Motion to Amend weighs against a finding of good cause. Initially, because the information contained therein is from 2014, it was previously in Butt's possession since then, and so could have been produced and relied upon in a timely manner. Moreover, the 2014 tax return is unsigned with no explanation, rending it of little or no value in any event. Accordingly, as no good cause supports Defendant's application to amend his answer and discovery responses long after the deadline for doing so had passed, all discovery has closed, and Plaintiffs' motion for summary judgment has been briefed, the Court respectfully recommends that it be denied in its entirety.

####     2.     **Bad Faith**

Even were the Court to examine the Defendant's Motion to Amend under the less restrictive standards of Rule 15, the Court would nevertheless recommend denying the Motion to Amend as the record supports a finding that the motion was made in bad faith.  "While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Franco v. Diaz*, 51 F. Supp. 3d 235, 245, (E.D.N.Y. Sept. 12, 2014) (citing *Youngbloods v. BMG Music*, 07 Civ. 2394, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011)); *see State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 417-18 (2d Cir. 1990) (denying motion to amend where plaintiff sought strategic advantage by reserving certain claims until after court's choice of law determination).

Defendant Butt claims that the Motion to Amend is not made in bad faith because "[as soon as the errors came to [his] attention, [he] provided the documents to the plaintiffs and filed a motion with this Court." *See* Def. Mem. at 2.  The record before the Court does not support this explanation.  As noted above, Defendants admitted that Cornerstone's gross annual income was equal to or greater than $500,000 in 2014 multiple times throughout the discovery process.  The admission first appeared in their Answer when Defendants were represented by counsel, and whereby they admitted to all the allegations contained in paragraph 13 of the Complaint.  *See* Ans. ¶ 13.  Paragraph 13 of the Complaint alleged, "Defendants'

qualifying business exceeds $500,000, and Defendants are engaged in interstate commerce within the meaning of the FLSA." *See* Compl. ¶ 13. Upon proceeding *pro se*, Butt relied on this admission throughout discovery to prevent disclosure of documentation of his or Cornerstone's income and finances, responding to a request for document production on the topic by stating, "Corporate defendant has admitted to FLSA jurisdiction, therefore, no response is required." *See* Def. Production Responses ¶ 18. Additionally, when asked in the First Set of Interrogatories to substantiate the Third Affirmative defense proffered in the Answer – that Defendants were not employees under the FLSA and NYLL – Butt responded that he was not pursuing that specific defense, which was put forth in the Answer either "unintentionally" or "mistakenly" by his former attorney. *See* Def. Responses to Interrogs. ¶ 4.

Plaintiffs' position that Cornerstone's income and/or sales satisfied the FLSA threshold only changed after discovery closed and upon the filing of Plaintiffs' Motion for Summary Judgment. *See* Def. Mot. Defendant alleges that he only then realized that were Cornerstone's business to fall below that threshold then the federal courts would lack jurisdiction over his case and Plaintiffs would have to refile in state court *See* Def. Decl.; Def. Letter. In his Declaration, Butt states, "I have been *pro se*, and I only became aware, in the last few months, that the FLSA requires the corporations to have at least $500,000 in revenues." *See* Butt Decl. However, even were the Court to presume Butt's ignorance of the law, Defendant provides no explanation as to why, both when represented by an attorney and then proceeding *pro se,* he explicitly and

14

repeatedly claimed the opposite.  *See id.*  According to Defendant's own disclosures, he previously misrepresented his corporation's income and/or sales, and has only decided to correct that now that it would give him a tactical advantage.  *See id.*  As Butt's present decision allegedly to correct his prior repeated misrepresentations is predicated wholly on defeating jurisdiction, it is strategic in nature and exhibits bad faith.  Accordingly, the Court again respectfully recommends that Plaintiff's Motion to Amend be denied.

### 3.    Substantial Prejudice

The Court also independently recommends that Defendant's Motion to Amend be denied because it would substantially prejudice Plaintiffs by delaying resolution of this matter and requiring extensive new discovery into Cornerstone's finances.  In determining the prejudicial effect of a proposed amendment to the pleadings on the opposing party, the Court must consider whether the amendment would require an opponent to expend significant additional resources to conduct discovery and/or significantly delay resolution of dispute.  *E.E.O.C. v. Morgan Stanley & Co.*, 211 F.R.D. 225 (S.D.N.Y. 2002) (citing *Block*, 988 F.2d at 350; *Tokio Marine and Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101 (2d Cir. 1986)) (denying employer leave to amend answer *nunc pro tunc* to include new defenses as extensive discovery had been conducted and additional discovery would be required and cause significant delay).  "A proposed amendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed."  *Zubuleke*, 231 F.R.D. 159, 161 (S.D.N.Y 2015).  Under such circumstances, the Court "'may deny leave to

amend where there has been a delay and "no satisfactory explanation is offered for the delay.'" *See id. (*quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)).

In the present matter, general fact discovery concluded on October 30, 2015 and the Court set September 15, 2016 as the deadline to commence dispositive motion practice after all outstanding discovery issues were resolved on August 25, 2016. *See* DE [24, 50]. Plaintiffs filed their Motion for Partial Summary Judgment prior to Defendant Butt filing his Motion to Amend the Pleadings. *See* DE [55, 61]. Butt previously refused to turn over materials relevant to his proposed amendments during discovery premised on his the admission that Cornerstone was subject to the FLSA as discussed in detail above. *See* Def. Responses to Production ¶¶ 18, 19. Were the District Court to grant Butt leave to amend the Answer, Plaintiff would be entitled to full discovery on the issue of Cornerstone's finances to properly test the validity of Butt's assertion, resulting in substantial costs and delays. Accordingly, as granting Defendant's Motion to Amend his answer at this stage would cause undue prejudice to Plaintiffs, the Court respectfully recommends that the motion be denied for this third reason.

Applying the standards detailed above, Butt's Motion to Amend should be denied as lacking the good cause required under Rule 16, for being made in bad faith, and that the granting of the motion would cause undue prejudice to Plaintiffs under Rule 15.

## IV.   MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court next turns to Plaintiffs' Motion for Partial Summary Judgment

### A. <u>Present Motion</u>

Plaintiffs petition the Court to grant partial summary judgment against Defendants on four distinct issues:  finding that Defendant Cornerstone is a covered employer under the FLSA, concluding that Defendant Butt is individually liable as Plaintiffs' employer under the FLSA and NYLL, holding that Defendants are liable for failing to provide wage notices and statements as required under NYLL §§ 195(1), 195(3), and striking Defendants' second and ninth affirmative defenses of good faith and a lack of willfulness.  *See* Pl. Mem. As Plaintiffs concede that genuine questions of material fact remain regarding the hours actually worked by Plaintiffs and how long Defendants employed the Feuers, at this time a trial on the questions of whether and to what extent Defendants violated the overtime and minimum wage provisions of the FLSA and NYLL as well as damages would be necessary.  *See id.*

### B. <u>Legal Standard</u>

A party may move for summary judgment as to any claim or defense, or part of any claim or defense, upon a showing that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "One of the principle purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Drug Mart Pharmacy Corp. v. Am. Home Prod. Corp.*, 472 F. Supp. 2d 385, 393 (E.D.N.Y. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553-4 (1986)) (emphasis

added).   Nevertheless, summary judgment is only appropriate with respect to a particular issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" with respect to that issue. *Id.* Rule 56(c) deems a fact "material" when its resolution "might affect the outcome of the suit under the governing law." *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 257-58 (E.D.N.Y. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).   The evidence alleged to substantiate a "genuine issue" must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, an issue will be deemed genuine when "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989)).

If the moving party meets its burden, then it is incumbent upon the nonmoving party to put forth in its opposition "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (citing Fed. R. Civ. P. 56(e)).   Such a showing must be specified and articulated and must provide more than "metaphysical doubt" that the moving party's evidence warrants judgment in its favor. *Matsushita,* 475 U.S. at 586,

106 S. Ct. at 1356; *see Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted) (holding summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case.").

"When a *pro se* litigant is involved, although the same standards for summary judgment apply, the *pro se* litigant 'should be given special latitude in responding to a summary judgment motion.'" *Laster v. Mancini*, 07-8265, 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013) (quoting *Gonzalez v. Long*, 889 F. Supp. 639 (E.D.N.Y. 1995)) (citing *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("This court has recently stated that special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment."); *Delgado v. Koehler*, 90 Civ. 7066, 1993 WL 227715 (S.D.N.Y. June 19, 1993)). Nevertheless, a *pro se* litigant cannot rely solely upon the pleadings, *see Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir. 2006), or "conclusory allegations or unsubstantiated speculation" to defeat summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)); *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). Instead, the *pro se* litigant "must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (party opposing summary judgment "must bring to the

19

district court's attention some affirmative indication that his [or her] version of relevant events is not fanciful").

## C. <u>Discussion</u>

For the reasons set forth below, as there are no genuine issues as to any of the material facts upon which the Feuers' Motion for Partial Summary Judgment relies, the Court respectfully recommends that it be granted.  Specifically, the Court recommends that Cornerstone be found to be a covered enterprise subject to the FLSA, that Defendants be found to be Plaintiffs' employers under the FLSA and the NYLL, that Defendants be found liable for violations of the wage notice and statement requirements of the NYLL, and that Defendants second and ninth defenses be dismissed as wholly unsupported.  Further, the Court respectfully recommends that Defendants cross motion for summary judgment be denied in its entirety.

### 1.  **Cornerstone is subject to the FLSA as a covered enterprise.**

As Defendants conceded that Cornerstone operated a motel engaging in over $500,000 of sales per year, Defendants are an interstate commercial enterprise governed by the wage and hour requirements of the FLSA.  The FLSA "protect[s] all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers." *Chang Mei Lin v. Yeh's Bakery, Inc.,* 12-CV-2146, 2013 WL 867436, at *2 (E.D.N.Y. Mar. 7, 2013) (quoting *Barrentine v. Arkansas-Best Freight Sys. Inc.,* 450 U.S. 728, 739, 101 S. Ct. 1437, 1444 (1981)) (additional citation, internal quotation marks omitted).  In

furtherance of this end, the Supreme Court "has consistently construed the Act liberally to apply to the furthest reaches [of the economy] consistent with congressional direction." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296, 105 S. Ct. 1953, 1959 (1985) (internal quotation marks omitted)). The FLSA provides labor protections to employees who are either (1) "employed by an enterprise engaged in commerce or in the production of goods for commerce," or (2) "engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. §§ 206(a), 207(a)(1). The two categories are commonly referred to as "enterprise" and "individual" coverage, respectively, and the employee bears the burden of establishing either basis of coverage. *See Jacobs v. New York Foundling Hosp.,* 577 F.3d 93, 96 (2d Cir. 2009); *Boekemeier v. Fourth Universalist Soc'y in the City of New York,* 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000).

Plaintiffs primarily seek to hold Defendants subject to the FLSA through enterprise liability. *See* Pls. Mem. at 5. Enterprise coverage requires that a plaintiff employee show that the employer is an "[e]nterprise engaged in commerce or in the production of goods for commerce" under the FLSA, meaning that the employer "(i) has employees engaged in commerce or in the production of goods for commerce, ...; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)...." 29 U.S.C. § 203(s)(1)(A).[3]

---

[3] The Court notes that Defendant does not dispute the first requirement of enterprise liability, in that he does not challenge that hotel managers, maids, and/or maintenance workers are employees

Here, upon the denial of Defendant's Motion to Amend, in light of Defendants' Answer, it is undisputed in the evidentiary record that Cornerstone is a covered enterprise. "'Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission.'" *Haywood v. Bureau of Immigration & Customs Enf't*, 372 F. App'x 122, 124 (2d Cir. 2010) (quoting *In re Velasquez*, 19 I. & N. Dec. 377, 382 (BIA 1986)). Facts admitted in an answer are such a distinct and formal admission as would bind a party "throughout the litigation." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.,* 440 F.3d 571, 578 (2d Cir. 2006) (citing *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985) (finding that district court erred by disregarding a fact admission and relying on contrary evidence)). Moreover, in the Second Circuit, responses to contention interrogatories are also distinct and formal admissions that estop a party from making assertions later that are in contradiction "or otherwise at variance with, those responses.'" *Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., PLC*, 05 CIV. 8665, 2008 WL 4449412, at *11

---

engaged in interstate commerce. *See* Def. Decl.; Def. Letter. The Court recommends that this prerequisite be found to have been satisfied as it is supported by the evidentiary record and is consistent with prevailing case law. *See, e.g., Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (citing *Archie v. Grand Centr. P'ship, Inc.,* 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (holding, in the context of an FLSA action, that maintenance workers had participated in interstate commerce under enterprise liability theory because they "handle[d] goods or materials that ha[d] moved or been produced in interstate commerce," because some of the defendants' "bags, brooms, shovels, pails, [etc.]" "undoubtedly moved in interstate commerce to New York City")); *Jiao v. Shi Ya Chen*, 03 CIV. 0165, 2007 WL 4944767, at *9 (S.D.N.Y. Mar. 30, 2007) (quoting *Heart of Atlanta Motel v. United States,* 379 U.S. 241, 250, 85 S. Ct. 348, 354 (1964)) ("The Supreme Court has held that hotels are 'enterprises having a direct and substantial relation to the interstate flow of goods and people' and thus within Congress' power to regulate under the Commerce Clause.").

(S.D.N.Y. Sept. 30, 2008) (quoting *Wechsler v. Hunt Health Sys., Ltd.,* 94 Civ. 8294, 1999 WL 672902, at * 2 (S.D.N.Y. Aug. 27, 1999)).

At the start of this litigation, Defendants, then collectively appearing through counsel, in their Answer admitted that Cornerstone was an employer under the FLSA and NYLL with annual business during the relevant years that "exceeds $500,000." *See* Butt Tr. at 98:7-101:8; Def.'s Product. Resps. ¶¶ 18, 19; Def.'s Resps. to Interrogatories; *compare* Compl. ¶ 13 *with* Ans. ¶ 13. Defendants in their Answer and Butt in his testimony also acknowledged that they engaged in interstate commerce by operating a motel that advertises nationally, is open to the general public, and obtains supplies and services from other states. *See* Butt Tr. at 98:7-101:8; Def. Responses to Production ¶¶ 18, 19; Def. Responses to Interrogs.; *compare* Compl. ¶ 13 *with* Ans. ¶ 13.[4]

Butt relied upon these admissions of the FLSA's applicability when, as officer and controlling shareholder of Cornerstone, he declined to produce any and all relevant documents concerning Defendants' annual gross sales on the grounds that "corporate defendant has admitted to FLSA jurisdiction." Def. Responses to Production ¶¶ 18, 19. Butt reinforced the continued applicability of the admission that Cornerstone was a covered enterprise when he withdrew his third affirmative defense that Defendants were not Plaintiffs' employers, explaining in the Defendants'

---

[4] Alternatively, the Court notes that Defendants acknowledged in their Answer that Cornerstone's "employees, including Plaintiffs, are individually engaged in interstate commerce by handling goods that were moved in interstate commerce and service guests who reside out-of-state," independently substantiating the applicability of the FLSA. *See* Butt Tr. at 98:7-101:8; Def. Responses to Production ¶¶ 18, 19; Def.'s Resps. to Interrogatories; *compare* Compl. ¶ 13 *with* Ans. ¶ 13.

Responses to Interrogatories that he was "not p[u]rsuing the defense [because] unintentional[l]y and mistak[en]ingly error was made by my former attorney." Def. Responses to Interrogs. ¶ 4.

Despite these repeated admissions, in response to Plaintiffs' Motion for Summary Judgment, Butt proffers a previously undisclosed, partial, unsigned, unverified tax return and alleges in a declaration that Cornerstone "did not gross over $500,000 in revenue." *See* Butt Decl., DE [61-2], Tax Return [61-6]. Premised on this same evidence, Butt opposes Plaintiff's Motion on this one issue and cross-moves for summary judgment in his favor seeking dismissal for the Feuers' failure to establish what Butt terms "jurisdiction" under the FLSA. *See* Def. Letter, DE [70].

Preliminarily, the Court notes that Defendant's characterization of the FLSA's threshold for enterprise liability as jurisdictional is incorrect. The FLSA's requirement that an employer gross at least $500,000 in annual sales in order to be considered an enterprise engaged in commerce is an element of an employee's claim for minimum wage and overtime violations rather than a jurisdictional prerequisite, because the FLSA makes no reference to the requirement in jurisdictional terms. *Angel v. Harvest C-Food Inc.*, 14-CV-6035, 2015 WL 7288644, at *2 (S.D.N.Y. Nov. 16, 2015) (collecting cases) ("Virtually all of the circuit courts and those district courts in the Second Circuit that have explicitly considered whether the FLSA's $500,000 requirement is jurisdictional agree that it is a requirement that goes to the merits of a claim and is not jurisdictional."); *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 300 (E.D.N.Y. 2009) (denying employer defendant's motion to dismiss based upon

submission of documents regarding gross annual sales suggesting that it did not satisfy the $500,000 threshold).  Accordingly, even were the Court to consider Butt's motion and/or his proffered evidence, dismissal on jurisdictional grounds would be improper.

Nevertheless, assuming that Butt's jurisdictional characterization was correct, the Court finds that the self-serving declaration and limited contradictory evidence that Butt puts forth in support of his argument are of no merit at this stage of the proceedings in light of the judicial admissions discussed above.  A party cannot create a genuine question of material fact by means of a self-serving declaration, affidavit, or affirmation that contradicts prior admissions.  *See Hale v. Mann*, 219 F.3d 61, 74 n.1 (2d Cir. 2000) (quoting *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995) (internal citations omitted)) ("'[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.'"); *Colozzi v. St. Joseph's Hosp. Health Ctr.,* 08-CV-1220, 2010 WL 1257924, at *2 (N.D.N.Y. Mar. 26, 2010).  Defendant's declaration and letter impermissibly attempt to negate the binding judicial admissions contained in Defendants' Answer and subsequent pleadings conceding the applicability of the FLSA due to Cornerstone's status as a covered enterprise.

Moreover, concerning Butt's cross motion for summary judgment, in FLSA litigation, "district courts in this circuit [] have 'expressed skepticism' about the reliability of a defendant's tax returns, especially where the returns 'conflict with other evidence.'" *Ying Shun Zhao v. Sunny 39 Hotel Corp.*, 14-CV-1847, 2015 WL

5307716, at *4 (E.D.N.Y. Sept. 10, 2015) (quoting *Lan Chen v. Gypsophila Nail & Spa Inc.*, 15-CV-2520, 2015 WL 3473510, at *3 (S.D.N.Y. June 2, 2015)) (citing *Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, 14-CV-580, 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015) ("The mere fact that Defendants have produced tax returns … is insufficient to support a motion for summary judgment."); *Chang Mei Lin v. Yeh's Bakery, Inc.*, 12-CV-2146, 2013 WL 867436, at *3 (E.D.N.Y. Mar. 7, 2013) ("Yeh's tax returns fall short of establishing as a matter of law that the annual gross income of the bakery falls below the FLSA threshold.")).  Accordingly, as Butt is bound by his admissions, the Court respectfully recommends that his cross motion for summary judgment be denied, Plaintiffs' Motion be granted, and Cornerstone found to be a covered enterprise under the FLSA.

### 2.  Defendant Butt is individually liable as an employer.

Next, the Court turns to whether the Defendant Butt, in addition to Cornerstone, can be properly classified as Plaintiffs' employer and held individually liable.  *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, 12-CV-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013).[5]  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  To determine whether an individual is an

---

[5] The Court notes that Defendant's opposition has not addressed Butt's status as an employer, Plaintiffs' arguments regarding the NYLL's wage notice and statement requirements, and the striking of Defendant's second and ninth affirmative Defenses.  *See* Def. Mot. to Amend; Def. Letter.  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Monachino v. Bair,* 09 Civ. 3939, 2011 WL 349392. at *4 (S.D.N.Y. Feb. 1, 2011) (quoting *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009)).  Though the Court could interpret Butt's failure to address these arguments as him having conceded these points, in light of his *pro se* status, the Court analyzes each claim on the merits.

"employer" under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104-05 (citation omitted); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (applying factors in FMLA context). In addition, the analysis depends on whether the defendant had "operational control" over employees. *Irizarry*, 722 F.3d at 110. Operational control does not necessarily require direct contact with employees and workplaces, but essentially that the employer exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Id.* The NYLL's definition of "employer" mirrors that of the FLSA. NYLL §§ 190(3), 651(6); *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (holding that "'district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA'") (quoting *Ho v. Sim Enters. Inc.*, 11 Civ. 2855, 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014)); *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ("New York's Labor Law is the state analogue to the federal FLSA").

Here, it is undisputed in the evidentiary record that Butt was Plaintiffs' employer. In fact, Defendant acknowledges that he is the owner, president, chief executive officer, and main stockholder of Cornerstone. Butt Tr. at 15:13-16:10, 20:5-20:9, 45:4-45:8; Ans. ¶¶ 14, 15; Def. Response to Production ¶ 6, 2/29/2016 Letter, DE

[55-7].   The record shows that he held supervisory authority over Plaintiffs, having hired at least one of the Feuers, that he had the authority to fire them, and that he determined their work duties and schedules as well as their rates and methods of pay.  Butt Tr. at 61:8-64:18, 68:6-68:19, 108:23-108:25, 109:2-109:20; Seth Feuer Tr. at 36:24-37:2; Susann Feuer Tr. at 12:8-13:6, 14:10-15:3.  Both when represented by counsel and upon proceeding *pro se*, Defendant has repeatedly admitted in his Answer and at his deposition that he was Plaintiffs' employer under the FLSA and NYLL.  Butt Tr. at 98:7-101:8; Ans. ¶¶ 13-15.

Applying the economic realities test, the record is sufficient to establish that Butt is himself an employer under the FLSA and the NYLL subject to individual liability.  *See Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting *Donovan v. Agnew*, 712 F.2d 1509 at 1511 (1st Cir. 1983)) ("'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'").   Accordingly, the Court respectfully recommends that Butt be held jointly and severally liable with Cornerstone for what if any damages are subsequently proven at trial.  *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 325 (S.D.N.Y. 2014) (stating that satisfaction of the economic realities test showed that the individual defendant was the FLSA plaintiff's employer along with the corporate defendant).

28

### 3. Defendants are liable for failure to provide wage notices and statements.

The Court next respectfully recommends that the District Court find that Defendants violated NYLL's wage notice and statement provisions as there are is no question of material fact concerning liability with respect to this cause of action. From April 9, 2011, to December 28, 2014, section 195(1)(a) of the NYLL required employers to provide all employees with a written notice "at the time of hiring" and "on or before February first of each subsequent year" of employment, which includes information about, among other things, the rate of pay, hours of employment and contact information for the employer. NYLL § 195(1)(a).  As a remedy for a violation, an employee may recover "damages of fifty dollars for each work week that the violations occurred or continue to occur," up to a maximum of $2,500, "together with costs and reasonable attorney's fees." *Id.* § 198(1-b).  Section 195(3) of the NYLL requires employers to provide employees a written statement with their wages that includes the rate of pay, deductions, allowances, hours of employment and overtime pay.  *Id.* § 195(3).  As a remedy, an employee may recover "one hundred dollars for each work week that the violations occurred or continue to occur," up to a maximum of $2,500, "together with costs and reasonable attorney's fees."  *Id.* § 198(1-d).

Defendant admits that he and Cornerstone failed to comply with the relevant New York State law and regulations regarding wage notices and statements during the Feuers' employment at the motel.  Butt admits that Defendants never provided Plaintiffs with a wage notice at the time of their hire and that Defendants never provided the Feuers with wage statements on paydays, instead paying them in cash

with no receipts or paystubs.  Butt Tr. at 87:15-87:25, 103:24-104:9, 107:25-108:5; Defendant's Responses to Plaintiffs' First Set of Requests for Admission, DE [55-12], ¶¶ 15, 16.  Accordingly, the Court respectfully recommends that Plaintiffs be found to be entitled to statutory damages for Defendants' violations of Sections 195(1) and (3) of the NYLL in an amount to be determined at trial.

### 4. Affirmative Defenses

The Court finally turns to Plaintiffs' application to have two of Defendants' affirmative defenses dismissed:  the second affirmative defense – that Plaintiffs are not entitled to liquidated damages because Defendants' actions "were at all times, taken in good faith and for legitimate and lawful business reasons" – and the ninth affirmative defense – that the Court should deny Plaintiffs' request for liquidated damages as "Defendants never willfully or otherwise knowingly violated" the FLSA and NYLL.  As Defendants have failed to put forth any evidence in support of either of these defenses and the record strongly suggests that Defendant acted in bad faith and willfully, the Court respectfully recommends that they both be dismissed.

A defendant seeking to rely on an affirmative defense has the burden of proof with respect to that defense, and must meet that burden by a preponderance of the evidence. *Griffin v. Astro Moving & Storage Co. Inc.*, 11-CV-1844, 2015 WL 1476415, at *2 (E.D.N.Y. Mar. 31, 2015) (citing *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (holding that "the employer bears the burden of establishing the defense of good faith" and that to establish good faith, a defendant must produce "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA]

requires and to comply with it."). Under the FLSA, a plaintiff is generally entitled to liquidated damages of one hundred percent of the actual damages owed. 29 U.S.C. § 216(b); *Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). It is the employer's burden to show that liquidated damages are inappropriate because it acted in subjective "good faith" on objectively "reasonable grounds" that its actions were not in violation of the FLSA. *Barfield*, 537 F.3d at 150 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). This burden is "a difficult one" whereby, an employer must demonstrate that it "took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Id.* The standard for liquidated damages under the NYLL is comparable to the FLSA, as the employer must pay liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL §§ 198, 663; *see Pineda-Herrera v. Da-Ar-Da, Inc.*, 2011 WL 2133825, *4, n.9 (E.D.N.Y. May 26, 2011) ("The state provision has since been amended, effective November 24, 2009, to remove the requirement of willfulness and provide a defense mirroring the good-faith defense available under the FLSA"); *Padilla*, 643 F. Supp. 2d at 313 n.18 ("The test for willfulness in the context of liquidated damages under the New York Labor Law parallels that employed in determining willfulness for limitation purposes under the FLSA.") (internal citations and quotation marks omitted). Moreover, a showing of willfulness on the part of Defendants is also relevant regarding extension of the statute of limitations, from two to three years. 20 U.S.C. § 255(a); NYLL 663(1); *Young v.* Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("The effect of a

willfulness finding is to extend the statute of limitations period from two to three years").

As there is no evidence in the record that Defendants ever took any actions to ensure compliance with the requirements of the FLSA or the NYLL, the Court respectfully recommends that Defendants' second and ninth affirmative defenses be stricken because Defendants have failed to carry their burden. *See Rosso v. PI Mgmt. Associates*, *L.L.C.,* 02 Civ. 1702, 2005 WL 3535060, at *9 (S.D.N.Y. Dec. 23, 2005) (awarding liquidated damages under the FLSA where "there is no evidence that the defendant took steps to ascertain the requirements of FLSA and to comply with them"). The record before the Court instead supports the conclusion that Defendants willfully violated the law and acted in bad faith.

Defendant Butt has had a substantial career in the hotel industry, which he acknowledged at his deposition, stating that he has owned or held supervisory roles in the hotel business for over two decades. Butt Tr. at 40:16-42:7, 69:23-69:25, 125:7-125:25, 132:20-133:9. Also, Butt admitted that despite this experience he did not seek any professional advice from any outside regulatory body, attorney, or other professional organization regarding any compliance issues with Cornerstone's compensation practices. *Id.* at 106:13-107:17; Def. Ans. to Interogs. ¶¶ 8, 9. Defendant's recklessness is further exhibited by his decision to pay the Feuers in cash rather than through the proper and more traceable means of a paycheck. Butt Tr. at 87:15-87:19; *cf. Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (finding reckless mental state under FLSA evidenced, in part, by employer's use of cash

payments for plaintiff's salary in an attempt to thwart overtime requirements). Further, Defendant has offered nothing in his opposition to contradict Plaintiffs' arguments concerning his willfulness. *See* Def. Decl., Def. Letter. Accordingly, as there is no genuine issue of material fact regarding Defendants' willful conduct and their failure to act in good faith, the Court respectfully recommends that Plaintiffs' Motion for Partial Summary Judgment dismissing Defendants' second and ninth affirmative defenses be granted.

## V.   CONCLUSION

Based on the foregoing, the Court respectfully recommends that the District Court deny Defendant's Motion to Amend the answer and other discovery responses and his cross motion for summary judgment in their entirety. Additionally, the Court recommends that Plaintiffs' Motion for Partial Summary Judgment be granted in its entirety finding that Cornerstone is a covered employer under the FLSA and Plaintiffs' employer under the FLSA and NYLL, that Defendant Butt is individually liable as an employer under the FLSA and NYLL, and that Defendants are liable for failing to provide wage notices and statements to Plaintiffs as required under NYLL §§ 195(1) and 195(3) and striking Defendants' second and ninth affirmative defenses.

## VI.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated: Central Islip, New York
      August 4, 2017              /s/ Steven I. Locke
                                   STEVEN I. LOCKE
                                   United States Magistrate Judge