# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 14-CV-5388 (JFB) (SIL)

SETH FEUER AND SUSANN FEUER,

Plaintiffs,

VERSUS

CORNERSTONE HOTELS CORP. AND NAEEM BUTT,

Defendants.

**MEMORANDUM AND ORDER**
January 24, 2020

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Plaintiffs Seth Feuer and Susann Feuer ("plaintiffs") bring this action against Cornerstone Hotels Corp., doing business as, at various times, Sun N Sand Hotel, Sea Haven Resort, Ocean Breeze Motel, and Longview Motel ("the hotel" or "Cornerstone"), and Naeem Butt ("Butt") (collectively, "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* Specifically, plaintiffs allege that defendants[1] violated the following provisions: (1) the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206(a), 207(a); (2) the minimum wage and overtime provisions of the NYLL, N.Y. Lab. Law §§ 160, 652(1); (3) the "spread of hours" provisions under the NYLL, N.Y. Lab. Law § 652; (4) N.Y. Lab. Law § 195(3), which requires employers to furnish employees with wage statements containing certain information each payday; and (5) N.Y. Lab. Law § 195(1), which requires employers to furnish employees with a wage notice containing certain information at the time of hiring and on an annual basis. In their complaint, plaintiffs seek: (1) preliminary and permanent injunctions restraining defendants from violating the relevant provisions of the FLSA and NYLL; (2) an order restraining defendants from retaliation against plaintiffs, (3) a judgment declaring defendants' practices unlawful and willful violations of federal and New York state law; and (4) an award of compensatory damages, liquidated damages, attorney's fees, costs, pre-judgment interest, and post-judgment interest. (ECF Nos. 1, 12-13.)

---

[1] Although the Court refers to both defendants for the purpose of this opinion, Cornerstone was not a part of the trial, and therefore the judgment is limited to Butt.

At the summary judgment stage, the Court adopted the Report and Recommendation of Magistrate Judge Steven I. Locke, holding that: (1) Cornerstone is a covered employer under the FLSA and plaintiffs' employer under the FLSA and NYLL; (2) Butt is individually liable as an employer under the FLSA and NYLL; (3) defendants are liable for failing to provide wage notices and statements to plaintiffs as required by NYLL § 195(1) and 195(3); and (4) plaintiffs were entitled to summary judgment on defendants' second and ninth affirmative defenses of good faith and lack of willfulness, and therefore entitled to liquidated damages. (ECF No. 76.)

A bench trial was held on September 5 and September 6, 2018, to determine defendants' liability, if any, with regard to the overtime and minimum wage provisions of the FLSA and NYLL and the "spread of hours" provision of the NYLL. Having held a bench trial, the Court now issues its findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure, after carefully considering the evidence introduced at trial, including assessing the credibility of the witnesses, the arguments of counsel, and the controlling law on the issues presented.

In summary, based upon the credible evidence, the Court finds that (1) in or about early May 2014, Butt agreed to pay $250 per week to Seth Feuer, and to allow Seth Feuer and his wife, Susann Feuer, to have a free room at the hotel while Seth helped out with work at the hotel; (2) although Susann Feuer assisted Seth Feuer in his work at the hotel, the agreement with Butt was that Seth and Susann Feuer would receive a total of $250 per week (regardless of whether Susann Feuer assisted her husband in his tasks at the hotel); (3) Seth Feuer was not "on call" to work throughout each day; (4) Butt's records accurately reflect the dates and hours worked by Seth Feuer and Susann Feuer; (5) with the exception of the first week of employment (May 5 through 11, 2014), for which Seth Feuer was not paid and Susann Feuer did not work, the amount Butt paid each week was sufficient to satisfy the minimum wage requirement for the total hours worked by Seth Feuer and Susann Feuer;[2] (6) the total hours worked by Seth Feuer or Susann Feuer never exceeded 10 hours in any day and, thus, plaintiffs are not entitled to any spread-of-hours pay; (7) the total hours worked by Seth Feuer or Susann Feuer never exceeded 40 hours in any week and, thus, no overtime was owed; and (8) neither Seth Feuer nor Susann Feuer received wage statements or notice provisions as required under New York Labor Law during the period of time that they were performing work at the hotel.[3]

Based upon these findings, and the other findings *infra*, plaintiffs are entitled to the following relief: (1) $92 in unpaid wages for violations of the minimum wage provisions of the FLSA and NYLL relating to Seth Feuer

---

[2] With the exception of the first week (for which Seth Feuer received no compensation) and the week of May 26 to June 1, 2014 (for which Seth Feuer was given $150), Butt gave $250 to Seth Feuer each week until the employment ended in September 2014. The $250 payment was sufficient to satisfy the minimum wage requirement for each week, even when the total hours worked each week by Seth Feuer and Susann Feuer are combined. For the week of May 26 to June 1, 2014, the $150 was also sufficient to cover the minimum wage requirement for all the hours worked by Seth Feuer (namely, 17 hours), and Susann Feuer did not work any hours that week.

[3] Although Butt made clear that any work that Susann Feuer performed to assist her husband would be included in the $250 cash payment each week, Butt was still required to comply with the wage statements and notice provisions as it related to Susann Feuer because he knew that she was performing work for defendants, and in fact, Butt was tracking her hours.

(for the week of May 5, 2014, to May 11, 2014, for which he was not paid);[4] (2) $92 in liquidated damages relating to Seth Feuer; (3) $2,700 in statutory damages relating to Seth Feuer in connection with his eighteen weeks of employment for violation of the wage statements and notice provisions under NYLL; (4) $2,300 in statutory damages relating to Susann Feuer for violation of the wage statements and notice provisions under NYLL; (5) pre-judgment interest to be determined; and (6) post-judgment interest to be determined.

## I. BACKGROUND

On September 15, 2014, plaintiffs filed their complaint alleging violations of the FLSA and NYLL. (ECF No. 1.) Defendants answered on November 26, 2014. (ECF No. 11.) Counsel for defendants made a motion to withdraw on March 12, 2015 (ECF No. 18), which was granted by Magistrate Judge Locke on March 16, 2015. In an order dated April 20, 2015 (ECF No. 21), Magistrate Judge Locke informed Butt that, although he could represent himself *pro se*, he could not represent Cornerstone, "a corporation, which must appear through an attorney" (ECF No. 76 at 5). The order further warned that failure to obtain counsel could risk the corporation being held in default and having a default judgment entered against it. (*Id.*)[5] To date, no attorney has entered an appearance on behalf of Cornerstone. The parties undertook discovery for the remainder of 2015 and much of 2016.

On October 14, 2016, Butt filed a letter requesting leave to amend his answer. (ECF No. 57.) On October 17, 2016, plaintiffs filed a motion for partial summary judgment. (ECF Nos. 55, 56.) At the Court's direction, Butt formally filed his motion to amend and cross-motion for summary judgment on November 17, 2016. (ECF No. 61.) The Court referred the motions to amend and for partial summary judgment to Magistrate Judge Locke on April 6, 2017. (ECF No. 69.) Magistrate Judge Locke issued a Report and Recommendation on August 4, 2017 (ECF No. 76), which the Court adopted on August 31, 2017 (ECF No. 78).

As noted *supra*, the Report and Recommendation, as adopted, granted plaintiffs' motion in its entirety, and denied defendants' motions in their entirety, holding that: (1) Cornerstone is a covered employer under the FLSA and plaintiffs' employer under the FLSA and NYLL; (2) Butt is individually liable as an employer under the FLSA and NYLL; (3) defendants are liable for failing to provide wage notices and statements to plaintiffs as required by NYLL § 195(1) and 195(3); and (4) plaintiffs were entitled to summary judgment on defendants' second and ninth affirmative defenses of good faith and lack of willfulness, and therefore entitled to liquidated damages. (ECF No. 76.)

The Court held a bench trial on September 5 and September 6, 2018, to determine defendants' liability, if any, with regard to the overtime and minimum wage

---

[4] Although plaintiffs stopped working at the hotel in September 2014 and remained at the hotel until February 2015 without paying any rent, defendants are not entitled to a lodging credit because plaintiffs were no longer working at that point, and (in any event) no notice was given to plaintiffs. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.3 ("The pay stub must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.").

[5] In their Proposed Findings of Fact, plaintiffs note their intention to request a certificate of default judgment and subsequently move for default judgment against Cornerstone, such that it may be "jointly and severally liable" for the judgment amount. (ECF No. 87 at 3, n.1.)

provisions of the FLSA and NYLL, and the spread-of-hours provision of the NYLL.[6] Plaintiffs Seth Feuer and Susann Feuer, and plaintiffs' friend Rosemarie Markus, testified for plaintiffs in their case-in-chief. Defendant Naeem Butt testified for the defense. Both sides also introduced exhibits into the trial record for consideration by the Court.

The Court has fully considered all of the evidence presented by the parties, as well as their written submissions. Below are the Court's Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

The following section constitutes the Court's Findings of Fact[7] pursuant to Federal Rule of Civil Procedure 52(a)(1). These Findings of Fact are drawn from witness testimony at trial and the parties' trial exhibits.

Defendant Naeem Butt is the owner and operator of Cornerstone Hotels Corp., doing business as, at various times, Sun N Sand Hotel, Sea Haven Resort, Ocean Breeze Motel, and Longview Motel, located at 52 Longview Road, Southampton, New York. (Tr. 20-21, 80, 118, 188.) The hotel comprises fourteen guest rooms. (Tr. 199.) Defendant Butt runs the hotel, along with his family, year-round. (Tr. 198-201.)

During the trial, plaintiffs offered the testimony of Susann Feuer, Seth Feuer, and Markus, a friend of plaintiffs who visited the hotel where they lived and worked during the relevant period. Plaintiffs also read into the record portions of the deposition of Butt taken on September 30, 2015. (Pl. Ex. 8, ECF No. 87-8.) Among the exhibits introduced at trial were records of hours that Butt kept for both plaintiffs. In one set of records, Butt listed the tasks that plaintiffs performed, and the other set included timecards (Pl. Exs. 1, 2, ECF No. 87-1, 2), the validity of which plaintiffs contest. Plaintiffs also introduced a record of Seth Feuer's hours (Pl. Ex. 4, ECF No. 87-4), which Butt contests; a document signed by Butt committing to pay Seth Feuer $250 per week (Pl. Ex. 3, ECF No. 87-3), the validity of which Butt contests; and emails sent by Susann Feuer to a third party who was considering purchasing the hotel during the relevant period (Pl. Ex. 5, ECF No. 87-5). No additional documentation was introduced regarding Susann Feuer's hours.

Upon careful consideration, the Court concludes that Butt's time records, entered into evidence as Plaintiffs' Exhibits 1 and 2, are adequate and accurate records of plaintiffs' hours.[8] Throughout the records, Butt documents the tasks performed and total hours in one record (*see* Pl. Ex. 1), and logs the time of the hours worked and total hours in the other (*see* Pl. Ex. 2). The hours worked are often recorded as occurring mid-to-late morning through early-to-mid afternoon, which is consistent with cleaning and maintenance work that would need to be done between 11:00 a.m. check-outs and 3:00 p.m.

---

[6] Both parties consented to a bench trial. (*See* Defendants' Pretrial Order ("PTO"), ECF No. 81, ¶ (v); Plaintiffs' PTO, ECF No. 80, ¶ 5.)

[7] To the extent that any Finding of Fact reflects a legal conclusion, it shall be deemed a Conclusion of Law, and vice-versa.

[8] Even assuming *arguendo* that the records are insufficient under the FLSA record-keeping requirements (*e.g.*, those listed at 29 C.F.R. § 516.2(a)(5)-(9)), the Court concludes that the records – combined with other documents and testimony at trial – are more than sufficient to satisfy an employer's burden to come forward with evidence of the precise amount of work performed and to negate the testimony and evidence offered by plaintiffs.

4

check-ins.[9] (*See* Tr. 53.) Butt credibly testified that he kept time records, including records of the tasks performed, in order to ensure that plaintiffs were paid adequately for their time. (Tr. 202.) Based upon these records and other credible evidence adduced at trial, the Court concludes that Butt's time records are accurate and makes the following findings regarding plaintiffs' employment with defendants.

### A. Background

Plaintiffs arrived at the hotel with the understanding, through their contact with a third party, that an individual (Duharminder Singh) was going to purchase the hotel and needed someone to operate it for him. (Tr. 60-68; Pl. Ex. 5.) More specifically, plaintiffs were told that they were going to be paid $250 each to run the hotel, and also would receive a free two bedroom house on the property. (Tr. 63.) After plaintiffs arrived at the hotel, the sale of the hotel fell through. (Tr. 198.) Plaintiffs told Butt that they were homeless at that point and needed some money to eat. (Tr. 198.) Given that the summer season was approaching, Butt agreed to allow them to stay in a room for free, and to find work at the hotel for Seth Feuer in exchange for $250 per week. (Tr. 198-99.) As discussed in more detail below, pursuant to this arrangement, Seth Feuer started working on May 5, 2014. On May 15, 2014, Susann Feuer began assisting her husband in his tasks.[10] (Tr. 199.)

After plaintiffs ceased working in early September 2014, they continued to stay in the hotel without paying rent for approximately five additional months (over Butt's objection) and left the hotel while the eviction process was still pending. (Tr. 91-94.)

### B. Seth Feuer

#### 1. Duration of Employment

Seth Feuer testified that he began working for defendants on May 3, 2014 (Tr. 118), and that his last day was September 8, 2014 (Tr. 119, 143). Seth Feuer's records of his own time also reflect that his last day was September 8, 2014.[11] Butt testified that Seth began work on May 6, 2014 (Tr. 207) and worked for seventeen weeks (Tr. 200), ending on September 2, 2014 (Tr. 206), the day after Labor Day. Butt's time records reflect hours for Seth Feuer beginning on May 5, 2014, and concluding on September 2, 2014. (Pl. Ex. 1, at 1, 111; Pl. Ex. 2, at 112, 128.) In light of the conflicting testimony and evidence on this issue, the Court concludes (having evaluated the evidence, including the credibility of the witnesses), that Butt's time records are the most reliable and credible evidence of Seth Feuer's dates of employment. Accordingly, the Court finds that Seth Feuer worked for defendants from May 5, 2014, through September 2, 2014.

#### 2. Hours

The parties presented conflicting testimony and documentary evidence regarding Seth Feuer's hours. Seth Feuer testified that he began work at 10:00 a.m. (Tr. 120), and worked until at least 8:00 p.m. each day (Tr. 127, 139). Plaintiffs' friend Rosemarie Markus, who testified that she visited the hotel on one occasion for

---

[9] The Court notes that Butt also credibly testified that his family assisted in the work that needed to be performed at the hotel. (Tr. 300.)

[10] To the extent that the details of this arrangement vary in the record, the Court finds these facts based upon the credible testimony at the trial.

[11] Although plaintiffs introduced Seth's own records of his hours at trial, he did not begin recording time until mid-June. (*See* Pl. Ex. 3, ECF No. 87-3.)

approximately three days in May or June during the relevant period, recalled that Seth Feuer would leave the room "a little later" than 7:00 a.m. and return approximately half an hour before Susann Feuer returned at 9:00 or 9:30 p.m. (Tr. 101-02.) Seth Feuer testified that his responsibilities included cleaning and maintenance of the guestrooms and grounds, and that he would confer with Butt before he began work each day, and when he finished work each night. (Tr. 120-25, 129.) Butt also testified that he knew when Seth began and ended his work each day because Seth would come and check in with Butt when he had finished. (Tr. 224.)

Seth Feuer testified that he would, "a couple of times a week," "get calls after hours" from Butt to assist with additional tasks (Tr. 128), and that he was "on called [sic] seven days at nights" (Tr. 145). Susann Feuer similarly testified that "Seth was always working, Seth was on call." (Tr. 52.) In his testimony, Butt denied that Seth Feuer was ever "on-call," noting that because Butt lived on the property himself, after-hours check-ins and other tasks were handled by him and his family. (Tr. 209, 225.)

As previously stated, the hotel comprises only fourteen guestrooms (Tr. 199), two of which were occupied by plaintiffs and a long-term renter (Tr. 25-26, 147), and testimony offered by both plaintiffs and Butt agree that cleaning a single guestroom takes on average between 10 to 20 minutes for a stayover, or between 40 minutes to an hour for a checkout. (Tr. 36, 38, 83, 122-23, 200-201.) Butt also testified that he typically did not ask Seth Feuer to clean more than two or three rooms in a day, and that he only requested that Seth Feuer clean four rooms on five or six occasions. (Tr. 199-200.) Even crediting testimony that Seth Feuer performed tasks besides cleaning such as maintenance, as needed, and landscaping, on a weekly basis (Tr. 125), the Court does not credit the testimony of plaintiffs' witnesses with regard to Seth Feuer's hours.[12]

Similarly, after considering all of the evidence, the Court finds that Seth Feuer's records do not accurately reflect the hours he worked. With respect to the records themselves, they frequently reflect lengthy stretches of work which remain unchanged from day to day. For example, the records for August 25 through 29 all indicate six hours of work from 10:00 a.m. to 4:00 p.m., despite the inevitable variation in work that would accompany a fluctuation in guests from one day to the next. (Pl. Ex. 4, at 131.) Plaintiffs' records likewise fail to account for lunch and other breaks to which Seth and Susann Feuer both testified. (Tr. 43-44, 127.) The same records bear the note, "on call 24 hours seven days a week." (Pl. Ex. 4, at 133.) When asked by the Court why his time records did not account for hours until 8:00 p.m. each day, Seth Feuer testified, regarding the tasks, "No, because I was doing – it was like second nature. I would just do it to do it." (Tr. at 145.) The Court finds this explanation to be not credible. In short, the Court does not believe these records are accurate when considering the records in light of all of the evidence in the case – including an assessment of the credibility of the witnesses.

By contrast, the Court concludes that Butt's records are accurate in light of the size of the property, number of rooms, and tasks performed, and all of the other evidence in the case. Butt's time records do not reflect any work day exceeding 4.5 hours or any week exceeding 17 hours. (Pl. Ex. 2.)

In sum, the Court does not credit plaintiffs' testimony that Seth Feuer was on-

---

[12] The Court also notes that, other than one week of 41 hours, Seth Feuer's own records do not reflect any work day exceeding 8.5 hours, or any week exceeding forty hours. (*See* Pl. Ex. 4.)

call 24 hours a day, nor that he worked from 10:00 a.m. until 8:00 p.m. each night, and, instead, finds Butt's testimony to the contrary to be credible. In fact, plaintiffs' claims are unsubstantiated even by Seth Feuer's own records of his time, which the Court finds unreliable for the reasons stated above. Accordingly, the Court finds that Butt's testimony and records are a reliable accounting of Seth Feuer's hours.

### 3. Wages

At trial, Susann Feuer testified that plaintiffs were not paid for "three weeks in May," after which Butt gave Seth Feuer his first payment of $250. (Tr. 28, 94.) She further testified that Butt then attempted to reduce the weekly payment to $150, but that she confronted him on June 5, 2014. On that day, she had him sign a note, discussed *infra* and admitted at trial as Plaintiffs' Exhibit 3 (hereafter, "June 5 Note"), committing to pay Seth Feuer $250 beginning June 6, 2014, "with pay on 6/12/14 and every Saturday thereafter." (Tr. 29-31, 75.)

Seth Feuer testified that he was first paid at the end of May (Tr. 161), that Butt paid him a decreased amount in "June, end of May, beginning of June" (Tr. 137), and that he was paid $250 a week thereafter. He also confirmed that the impetus for the June 5 Note was that Butt wanted to "lower the money from $250 to $150." (Tr. 137.)

These issues regarding payment are the subject of portions of Plaintiffs' Exhibit 5, which contains various emails sent by Susann Feuer to a third party during the relevant period. As relevant here, Susann Feuer's emails provide contemporaneous accounts of what plaintiffs were paid. The email from May 26, 2014, states that plaintiffs were paid $250 "last week," which the Court understands to reference that they had been paid that past weekend for the week of May 12 to May 18. (Pl. Ex. 5, at 150.) The email from June 4 states that Butt had paid "$250 twice," which the Court understands to reflect payment for the weeks of May 12 and May 19.[13] (Pl. Ex. 5, at 147.) The email from June 7 states that Butt "only gave $150" to Seth Feuer for "last week," which the Court understands to refer to the week of May 26. (*Id.* at 145.)

In light of this contemporaneous documentary evidence and the credible testimony, the Court does not credit Butt's testimony that he paid plaintiffs $250 in cash each week beginning May 5, when Seth Feuer began work. (Tr. 207.) Accordingly, the Court concludes that plaintiffs did not receive any pay for the week of May 5 through 11; that plaintiffs were paid $250 for the week of May 12 through May 18 and $250 for the week of May 19 through May 25; that plaintiffs were paid $150 for the week of May 26 through June 1; and that Seth Feuer received $250 for the week of June 2 through June 8, and for each week thereafter, terminating on September 2, for any work that he performed and any assistance that his wife gave him.

### C. Susann Feuer

### 1. Duration of Employment

At trial, Susann Feuer testified that she worked for defendants from May 2, 2014 (Tr. 20) through September 6, 2014 (Tr. 54), for "122 days straight" (Tr. 33). As noted, plaintiffs did not submit any documentation

---

[13] Although Seth Feuer testified that he did not receive any payment during the month of May (Tr. 136), that testimony is contradicted by Susann Feuer's contemporaneous emails (noted above) which discuss two payments in May for $250 and one for $150 in late May/early June. In light of all the evidence, the Court finds his testimony not credible on this issue.

7

of hours kept by Susann Feuer.

At trial, plaintiffs introduced, and Susann Feuer testified to the veracity of, the June 5 Note, which reads: "Seth Feuer is to be paid $250.00 weekly beginning 6/6/14 with pay on 6/12/14 and every Saturday thereafter." (Pl. Ex. 3.)[14] Susann Feuer testified that she wrote the text of the document, which Butt then signed. (Tr. 29-30, 70-71.) When asked why she did not include payment for herself in the text of the document, Susann testified that it was because Seth "was doing the majority of the work." (Tr. 70, 73.)

Butt testified that Susann started "participating" in Seth Feuer's work on May 15, 2014 (Tr. 199), and did so until Seth Feuer's employment ended on September 2, 2014 (Tr. 205-06).

Having considered the conflicting documentation and testimony, the Court finds that Susann Feuer did work during the period of May 15, 2014, to September 2, 2014. In connection with that work, it was clear to plaintiffs that Seth Feuer was receiving $250 in cash per week for his work, as well as for any assistance that Susann Feuer provided her husband, and that any remuneration for Susann Feuer would be part of the $250 given to Seth Feuer.[15] Moreover, as discussed *infra*, their combined hours never exceeded 40 hours in one week (or 10 hours in one day), and the $250 payment by Butt each week was sufficient to cover the combined hours of Seth and Susann Feuer for purposes of the minimum wage requirements of the FLSA and the NYLL.[16]

2. Hours

With regard to her hours, Susann Feuer testified that she would confer with Butt at 7:00 a.m. each morning regarding the rooms to be cleaned that day (Tr. 22), although no rooms were ever ready to be cleaned at that time (Tr. 35). She testified that she worked four hours a day (Tr. 44, 51), but that because of the nature of the tasks, like waiting for laundry cycles, "I did it 24 hours a day combined . . . [i]t wasn't just, okay, she worked from 7 to 11" (Tr. 40). She also testified that she would often tell Butt when she had completed rooms or tasks. (Tr. 45.) The Court does not credit Susann Feuer's testimony regarding her work hours for reasons similar to those undermining Seth Feuer's testimony. In particular, given the scope of the work that she said she performed, and which Butt's records describe, it is not credible that Susann Feuer worked for four or more hours a day, seven days a week at an establishment of this size.[17] Plaintiffs also have supplied no

---

[14] Although Butt contests the authenticity of the document itself, he does not contest its substance – namely, that he agreed to pay Seth Feuer $250 per week for his services. (Tr. 215.)

[15] The Court notes that there is evidence in the record that Susann Feuer believed that the potential buyer of the hotel was going to pay her and Seth $250 each per week when they first arrived at the hotel. There is no evidence, however, that Butt ever agreed to such payment for each of them when the purchase of the hotel fell through and Butt agreed to hire Seth Feuer for the summer. In fact, the understanding with Butt was confirmed at the June 5 meeting which related to Seth Feuer's rate of pay ($250 per week), without any discussion or documentation regarding payment to Susann Feuer.

[16] The Court highlights that Susann Feuer did not work during the week of May 26 when Seth Feuer was paid $150, instead of $250.

[17] Rosemarie Markus testified that, during her visit, Susann Feuer would leave the room to work around 6:30 a.m. and return around 9:00 or 9:30 p.m. (Tr. 101.) The Court does not credit the testimony of Markus in light of the other testimony and evidence provided, and emphasizes that her estimates far exceed even Susann Feuer's own account of her work.

8

documentation of her hours. In short, the Court does not credit Susann Feuer's testimony regarding her hours and, instead, finds that Butt's time records are a reliable accounting of Susann Feuer's time.

### 3. Wages

As noted above, based on the credible testimony and documentary evidence produced at trial, the Court concludes that defendants paid plaintiffs collectively $250 for the weeks of May 12 through 18 and May 19 through 26, and paid $150 for their combined work the week of May 26 through June 1. Plaintiffs collectively received $250 each week thereafter until they stopped working in early September 2014.

As confirmed by the June 5 Note, all payments made were intended to be consideration of Seth Feuer's work because it was understood that Susann Feuer would not be separately paid by Butt for any voluntary assistance she gave her husband. Thus, the $250 was intended to cover all the work regardless of whether performed solely by Seth Feuer, or with the help of his wife, Susann Feuer. In fact, Susann Feuer acknowledged during her testimony that, following the June 5 meeting, she understood that any payment for her work would be included in the $250 cash payments each week to her husband. (*See, e.g.*, Tr. 96 ("I honestly felt that the $250 was one and a quarter each, that he was paying for both of us . . . ."); Tr. at 97 ("In my reality I thought he was giving us one and a quarter each a week and when he knocked us down to 100 I thought we were getting $75 a week each. I believed I was getting paid but I was getting paid half of what we initially agreed upon.").) Although she testified that she understood that she was getting half of her husband's payment, the Court finds that Butt never agreed to any such arrangement, but rather made clear that payment for any assistance that Susann Feuer decided to provide to her husband was included in the $250 in cash Butt gave to her husband each week.

### III. BURDEN OF PROOF

Plaintiffs bear the burden of proof in this case on each and every claim, as well as on the issue of damages. They must prove by a preponderance of the evidence that defendants did not adequately compensate them as required by the FLSA and NYLL. *See Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) ("[Plaintiffs] must produce sufficient evidence to establish that the employees have in fact performed work for which they were improperly compensated and produce sufficient evidence to show the amount and extent of that work 'as a matter of just and reasonable inference.'" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute*, The Portal-to-Portal Act)); *Flores v. J & B Club House Tavern, Inc.*, No. 10-Civ-4332 (GAY), 2012 WL 4891888, at *1 (S.D.N.Y. Oct. 16, 2012) (discussing NYLL plaintiffs' burden to prove they performed the work for which they claim defendant failed to compensate them). Plaintiffs must also prove the amount of damages by a preponderance of the evidence.

### IV. CONCLUSIONS OF LAW

Plaintiffs assert that Seth Feuer has not been fully compensated for overtime under the FLSA and NYLL, and that neither plaintiff was paid in accordance with the minimum wage requirement. For the reasons set forth below, the Court finds that plaintiffs have not proved by a preponderance of the evidence that defendants have violated the overtime provisions of the FLSA and NYLL or spread-of-hours provision of the NYLL, but that they have proved that defendants are liable for limited violations of the minimum wage provisions of the FLSA and NYLL.

### A. Unpaid Wages Claims

Under the FLSA, employers engaged in interstate commerce must pay overtime compensation to an employee working more than forty hours per week at one and one-half times his or her hourly rate or applicable minimum wage. 29 U.S.C. § 207(a)(1). NYLL has a parallel requirement. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. The regular, minimum rates at which employees must be paid are established by Section 6 of the FLSA, 29 U.S.C. § 206(a)(1)(C), and Section 652(1) of the NYLL. During the relevant period, the federal minimum wage was $7.25 per hour; the New York state minimum wage was $8.00 per hour. 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. Law § 652(1).

In addition, the FLSA sets forth a broad civil enforcement scheme, pursuant to which:

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). In an action to recover unpaid overtime wages under the FLSA, a plaintiff must show that: "(1) he was an employee who was eligible for overtime ([*i.e.*,] not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009). The NYLL scheme lacks the interstate commerce and minimum sales requirements of the FLSA, but otherwise "mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359-60 (E.D.N.Y. 2015) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)). That plaintiffs were not exempt from the overtime requirements of either statute is not in dispute.

Plaintiffs allege that Seth Feuer worked over ten hours a day, seven days a week, and was on-call 24 hours a day, seven days a week, throughout the duration of his employment with defendants, and that he was not compensated for overtime work, or for extra compensation required where his spread of hours exceeded ten. Plaintiffs also allege that Seth Feuer and Susann Feuer were not paid the minimum wage as required by federal and New York state law.

Although a plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated," when an employer has "inaccurate or inadequate" records, the plaintiff "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. Sufficient evidence may be established by "recollection alone." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection."). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the

inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88.

Although, as discussed *supra*, plaintiffs presented testimony and evidence in support of their overtime and minimum wage allegations, the Court concludes that Butt credibly presented accurate records to rebut plaintiffs' overtime claims and minimum wage claims, with the exception of the week of May 5, 2014, for which Seth Feuer was not paid. The Court does not credit the testimony of plaintiffs' witnesses, including plaintiffs, or plaintiffs' documentary evidence with regard to hours worked. Plaintiffs have met their burden only with regard to the one week during which Seth Feuer was not paid. As noted *supra*, Susann Feuer did not work that week.

In sum, notwithstanding Butt's credible testimony and time records that undermine the testimony of plaintiffs' witnesses and time records, the Court finds that defendants have violated the minimum wage provisions as to Seth Feuer for the first week of his employment. 29 U.S.C. §§ 206, 207, 215(a)(2); N.Y. Lab. Law § 160, 652(1). The Court bases this conclusion upon the records of payment found in plaintiff's contemporaneous emails and corroborated by plaintiffs' testimony on this point. Specifically, the Court finds the following: (1) during the relevant time period, defendants did not violate the overtime provisions of the FLSA or its NYLL counterpart because, although defendants paid a fixed weekly salary, plaintiffs' hours never exceeded 40 hours per week;[18] (2) during the relevant time period, defendants violated the minimum wage provision of the FLSA and its NYLL counterpart for the first week of Seth Feuer's employment when defendants failed to pay him in compliance with the then-applicable New York state and federal minimum wage rate, *see* 29 C.F.R. §§ 778.5, 778.315; N.Y. Lab. Law § 652(1); and (3) that defendants are, therefore, liable for the difference between the amount that the employee was paid and the amount that the employee would have earned if he had received hourly pay at the applicable minimum wage. *See, e.g., Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 KAM SMG, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011); *Cao v. Chandara Corp.*, No. 00 Civ. 8057(SAS), 2001 WL 34366628, at *6 (S.D.N.Y. July 25, 2001).

B. Spread-of-Hours Claim

Under New York state law, employees in "all-year hotels" who work a "spread of hours" in excess of ten hours – defined as "the length of the interval between the beginning and end of an employee's workday" – are entitled to an additional hour's worth of pay at the minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. Because, based on a review of defendants' credible time records, the Court does not find evidence in the record to establish that Seth Feuer had any workday spanning more than ten hours during his employment with defendants, plaintiffs are not entitled to recover under this provision.[19]

C. Recordkeeping Claims

As noted above, the Court previously adopted the Report and Recommendation of Magistrate Judge Locke, finding that defendants are liable for violations of NYLL § 195(3) and 195(1). Accordingly, plaintiffs

---

[18] The Court underscores that even the combined hours of Susann and Seth Feuer never exceeded forty hours in a particular week.

[19] Moreover, even if Susann Feuer's hours are considered along with her husband's hours, their combined hours do not exceed ten hours on any individual day.

11

are entitled to statutory damages for violations of these sections as detailed below.

## D. Damages

Plaintiffs seek (1) for Seth Feuer, $33,143.03 in unpaid minimum wage and overtime compensation, $1,040 in unpaid spread-of-hours compensation, $34,183.03 in liquidated damages, and $2,700 in statutory damages under NYLL § 195; and (2) for Susann Feuer, $2,596.88 in unpaid minimum wages, $2,596.88 in liquidated damages, and $2,700 in statutory damages under NYLL § 195. Plaintiffs also request pre-judgment interest under NYLL dating from July 5, 2014 through the date of judgment, as well as post-judgment interest on the award amount.

### 1. Backpay

Plaintiffs seek $33,143.03 for Seth Feuer, and $2,596.88 for Susann Feuer in unpaid wages for violations of the minimum wage and overtime provisions of the FLSA and NYLL. 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 160, 652(1). (*See* Pls.' Prop. Findings, ECF No. 87, at 1.) Although plaintiffs may be entitled to recover under both statutes, they may not "double recover" for violations of both statutes. *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. CV 11–3384(DRH)(WDW), 2012 WL 4174725, at *2 (E.D.N.Y. Aug. 21, 2012), *report and recommendation adopted*, 2012 WL 417410 (E.D.N.Y. Sept. 19, 2012); *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725(DC), 2010 WL 4159391, *3 (S.D.N.Y. Sept. 30, 2010). Because Butt's liability is coextensive under both statutes in light of the findings above, and state minimum wage laws are not preempted by the federal minimum wage where the state minimum wage exceeds the federal one, 29 U.S.C. § 218(a), as is the case here, the Court calculates plaintiffs' damages using the state minimum wage and grants recovery under NYLL.

The Court does not find the damage calculations by plaintiffs to be a reasonable estimate of the amount due to plaintiffs based upon the evidence in the record, and finds that plaintiffs have not met their burden of proof on this issue. Once a plaintiff has proven a *prima facie* case, "the burden shifts to the employer . . . to produce evidence of the 'precise amount of work performed' or evidence to 'negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Reich*, 121 F.3d at 67 (quoting *Mt. Clemens*, 328 U.S. at 687-88). In particular, plaintiffs did not establish a *prima facie* case, and in any event, defendants presented credible evidence of the hours that plaintiffs worked, thus enabling the Court to calculate the unpaid wages owed to plaintiff Seth Feuer for the week during which the Court has found that he was not paid – namely, his first week of employment. Crediting defendants' contemporaneous records of plaintiffs' hours, the Court finds that Seth Feuer is entitled to $92 for work performed during the week of May 5 through 11, 2014, as calculated by multiplying the hours he worked (11.5) by the applicable $8.00 minimum wage in New York state.[20] A review of Butt's time records and wages paid for all other weeks reflect that plaintiffs (even when Seth and Susann Feuer's hours are combined) were paid at a rate above the minimum wage for their hours during each particular week.[21]

### 2. Liquidated Damages

Under the FLSA and NYLL, employers who violate the law are liable not only for

---

[20] As stated *supra*, Susann Feuer did not begin working for defendants until May 15, 2014.

[21] The Court reached this conclusion by dividing the compensation plaintiffs received by the number of hours worked in a week for each week of work.

unpaid wages but for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(c); NYLL §§ 198, 663. The Portal-to-Portal Act modified the FLSA by allowing courts, in their discretion, to reduce the amount awarded in liquidated damages or to eliminate them entirely if an employer proves that its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. "[T]he employer bears the burden of establishing, by 'plain and substantial evidence,' subjective good faith and objective reasonableness." *Reich*, 121 F.3d at 71 (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991)). "The burden . . . is a difficult one to meet, however, and double damages are the norm, single damages the exception." *Id.* (alteration, citation, and internal quotation marks omitted). Liquidated damages in the amount of actual damages are likewise available under NYLL §§ 198(1-a) and 663(1), "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." As with coextensive compensatory damages, plaintiffs may only recover liquidated damages under one statute. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016).

In adopting Magistrate Judge Locke's Report and Recommendation upon summary judgment, the Court found that plaintiffs had met their burden in proving that defendants' actions were willful. Butt acknowledged in his deposition and at trial that he had worked in the hotel industry for many years and held supervisory roles for over two decades, yet failed to seek any advice regarding compensation practices, and demonstrated recklessness by paying plaintiffs in cash, rather than through more proper and traceable means, like checks. (*See* ECF No. 76, at 32-33.) Therefore, the Court concludes that defendants' actions were not in good faith, and that they had no reasonable grounds for so acting. Accordingly, the Court finds that plaintiff Seth Feuer is entitled to a judgment in the amount of $92 in liquidated damages under NYLL.

3. Statutory Damages

Pursuant to the version of NYLL § 195(3) that was effective at the time of plaintiffs' employment, plaintiffs are entitled to $100.00 dollars for each work week during which an employer fails to provide wage statements meeting statutory requirements, up to a maximum of $2,500.00. N.Y. Lab. Law § 198(1-d). Likewise, pursuant to NYLL § 195(1), plaintiffs are entitled to $50.00 for each work week during which an employer fails to provide the wage notices that the NYLL requires be provided at the time of hiring, up to a maximum of $2,500.00. N.Y. Lab. Law § 198(1-b).

In adopting Magistrate Judge Locke's Report and Recommendation upon summary judgment, the Court found that plaintiffs had met their burden in proving that defendants are liable for failing to provide wage notices and wage statements as required under NYLL § 195(1) and 195(3). Accordingly, multiplying Seth Feuer's duration of employment of eighteen weeks by $100.00 for violation of § 195(3), the Court finds that Seth Feuer is entitled to $1,800 under that provision. Multiplying his eighteen weeks of employment by $50.00 for violation of § 195(1), the Court concludes that Seth Feuer is entitled to $900.00, for a combined total of $2,700.00 in statutory damages for the eighteen weeks that he worked for defendants.

With respect to Susann Feuer, the Court reiterates that she did not work during her husband's first week of employment (May 5, 2014) or his last week of employment

(September 2, 2014), nor did she work the week of May 26, 2014. Accordingly, performing the same calculations for Susann Feuer, the Court concludes that Susann Feuer is entitled to $1,500.00 under § 195(3) for the fifteen weeks that she performed work. These fifteen weeks account for the fact that she did not work the week of May 26, 2014, and thus there was no need for Butt to provide her a wage statement that week. With respect to § 195(1), the Court finds that Susann Feuer is entitled to $800.00 for defendants' continued failure to provide a wage notice for the sixteen weeks that she was in their employ, for a combined total $2,300.00 in statutory damages.

### 4. Pre-Judgment Interest

NYLL provides for the award of pre-judgment interest to prevailing plaintiffs under § 198(1-a). The applicable interest rate is 9% per annum, calculated "from the date [each item] was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. §§ 5001(b), 5004. Plaintiffs are "entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed." *Santillan*, 822 F. Supp. 2d at 298. In addition, "[p]rejudgment interest is not available for violations of the wage statement or wage notice provisions." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

As explained above, plaintiffs have demonstrated that Seth Feuer is owed $92 in unpaid wages. By contrast, plaintiffs have not demonstrated that Susann Feuer is owed any unpaid minimum wages, and they failed to prove that either plaintiff is entitled to spread-of-hours pay or overtime compensation. Accordingly, plaintiffs are entitled to pre-judgment interest on Seth Feuer's award of $0.02 daily between July 4, 2014,[22] until the day that judgment is entered. This amount was calculated by multiplying Seth's unpaid wages by nine percent, and dividing that figure by 365 days. *See, e.g., Rosales v. Low Bid, Inc.*, No. 17CV3183ADSSIL, 2018 WL 3468710, at *10 n.2 (E.D.N.Y. July 3, 2018), *report and recommendation adopted*, No. 217CV03183ADSSIL, 2018 WL 3468697 (E.D.N.Y. July 18, 2018); *Pimental v. Memories Pub Inc.*, No. CV 16-51 (JFB)(ARL), 2018 WL 1973174, at *3 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted sub nom. Pimentel v. Memories Pub Inc.*, No. 16-CV-0051(JFB)(ARL), 2018 WL 1970742 (E.D.N.Y. Apr. 25, 2018).

### 5. Post-Judgment Interest

Plaintiffs are entitled to post-judgment interest "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, the Court concludes that plaintiffs be awarded post-judgment interest on its monetary award, to be calculated pursuant to 28 U.S.C. § 1961(a).

### V. CONCLUSION

For the foregoing reasons, the Court concludes, after carefully considering the evidence introduced at trial, the arguments of

---

[22] Calculated as halfway between May 5 and September 2, 2014.

counsel, and the controlling law on the issues presented, that plaintiffs have not demonstrated the overtime or spread-of-hours violations by a preponderance of the evidence. However, the Court finds that Butt is liable for the limited minimum wage violations and for the wage statement and wage notice violations discussed herein. The Court hereby enters judgment against defendant Butt in the amount of $2,884 to Seth Feuer consisting of: (1) $92 in unpaid wages for violation of the minimum wage provisions of the FLSA and NYLL (for the week of May 5 to May 11, 2014, for which he was not paid); (2) $92 in liquidated damages relating to Seth Feuer; and (3) $2,700 in statutory damages relating to Seth Feuer in connection with his eighteen weeks of employment for violation of the wage statements and notice provisions under NYLL. The Court also enters judgment against defendant Butt in the amount of $2,300 in statutory damages relating to Susann Feuer in connection with her sixteen weeks of employment for violation of the wage statements and notice provisions under NYLL.[23] The Court thus finds Butt liable for a total of $5,184.00.

Added to this amount shall be pre- and post-judgment interest to be calculated as stated above. The Clerk of the Court shall enter judgment accordingly.[24]

SO ORDERED.

S/ JOSEPH F. BIANCO
_____
JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: January 24, 2020
Central Islip, NY

\* \* \*

Plaintiffs are represented by Dong Phuong V. Nguyen, Borrelli & Associates, P.L.L.C., 1010 Northern Boulevard, Suite 328, Great Neck, NY 11021.

Defendant Naeem Butt proceeds *pro se*, 52 Longview Road, Southampton, NY 11968. Defendant Cornerstone Hotels Corp. is unrepresented.

---

[23] To the extent that plaintiffs seek any declaratory or injunctive relief, the Court concludes there is no basis for such relief under the facts of this case.

[24] Because defendant Cornerstone Hotels Corporation is unrepresented, the judgment does not apply to it. However, plaintiffs may move for a default judgment against the corporation if they wish to pursue the claims against it.

15