# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 14-CV-5388 (JFB) (SIL)

SETH FEUER AND SUSANN FEUER,

Plaintiffs,

VERSUS

CORNERSTONE HOTELS CORP. AND NAEEM BUTT,

Defendants.

FILED
CLERK

11:53 am, Oct 20, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

## MEMORANDUM AND ORDER
### October 20, 2021

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Plaintiffs Seth Feuer and Susann Feuer ("plaintiffs") brought this action against Cornerstone Hotels Corp., doing business as, at various times, Sun N Sand Hotel, Sea Haven Resort, Ocean Breeze Motel, and Longview Motel ("Cornerstone"), and Naeem Butt ("Butt," and collectively with Cornerstone, "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* Specifically, plaintiffs alleged that defendants violated the following provisions: (1) the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206(a), 207(a); (2) the minimum wage and overtime provisions of the NYLL, N.Y. Lab. Law §§ 160, 652(1); (3) the "spread of hours" provisions under the NYLL, N.Y. Comp. Codes R. & Regs tit. 12, § 142-2.4; (4) N.Y. Lab. Law § 195(3), which requires employers

to furnish employees with wage statements containing certain information each payday; and (5) N.Y. Lab. Law § 195(1), which requires employers to furnish employees with a wage notice containing certain information at the time of hiring and on an annual basis. (ECF No. 1.) Plaintiffs sought slightly less than $80,000 in damages. (ECF No. 87 at 17-18.)

On January 24, 2020, after a two-day bench trial on September 5 and 6, 2018, this Court issued its findings of fact and conclusions of law. *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2020 WL 401787, at *1 (E.D.N.Y. Jan. 24, 2020). In summary, the Court concluded that plaintiffs were entitled to the following relief: (1) $92 in unpaid wages for violations of the minimum wage provisions of the FLSA and NYLL relating to Seth Feuer; (2) $92 in liquidated damages relating to Seth Feuer; (3) $2,700 in statutory damages relating to Seth Feuer in connection with his eighteen weeks of employment for violation of the wage statements and notice provisions under

the NYLL; (4) $2,400 in statutory damages relating to Susann Feuer in connection with her sixteen weeks of employment for violation of the wage statements and notice provisions under the NYLL; (5) pre-judgment interest; and (6) post-judgment interest. *Id.* at *1-2 (E.D.N.Y. Jan. 24, 2020).

Presently before the Court is a motion for fees and costs filed by plaintiffs' counsel, Borrelli & Associates, (ECF. No. 106), as well as their request for taxation of costs (ECF Nos. 101-02). Accompanying their motion for fees and costs is a memorandum of law ("Pls.' Mem.") and an affidavit from Danielle E. Mietus ("Mietus Aff.") with attached exhibits. (ECF Nos. 107-08.) In particular, plaintiffs' counsel seeks $50,772.50 in fees for certain tasks and $1,344.91 in reimbursable costs. Mr. Butt submitted his objection to the motion on September 28, 2020, principally arguing that the fee request was excessive in light of plaintiffs' limited success. (ECF No. 113.) Plaintiffs filed a reply on October 15, 2020, responding that their fee award need not be proportional to the amount of their recovery under governing Second Circuit case law and reiterating that their requested fee award is reasonable. (ECF No. 114.) In their reply, plaintiffs also requested an additional $750 in fees for time spent preparing that letter brief, which brings the total requested fee amount to $51,522.50. (*Id.* at 3 n.3.)

With respect to their request for taxation of costs, which was filed along with a Bill of Costs and certain supporting documentation, plaintiffs request that the Clerk of Court tax their costs in the amount of $1,418.09. (ECF Nos. 101-02.)

As explained below, the Court concludes, in its discretion, that the fees requested by plaintiffs' counsel are excessive and should be reduced to $29,176.50 for which defendants are jointly and severally liable, and, for work performed in connection with

the motion for default judgment, an additional $1,737.00 for which Cornerstone alone is liable. The Court further concludes that plaintiffs should be awarded the full $1,344.91 in reimbursable costs and that the requested $1,418.09 in taxable costs is properly taxable.

I. BACKGROUND

A. Factual Background

The Court set forth the factual and procedural background of this case in its January 24, 2020 Memorandum and Order, *see Feuer*, 2020 WL 401787, at *2-8, and that background is incorporated by reference herein.

II. DISCUSSION

Plaintiffs' counsel does not request fees for all of their time spent on this case; rather, as noted above, they request $51,522.50 in fees for certain tasks and $1,344.91 in reimbursable costs. (Mietus Aff. ¶¶ 46, 82; ECF No. 114 at 3 n.3.) In particular, plaintiffs seek $48,627.50 for compensation for the following tasks from both defendants jointly and severally: (1) $3,625 for drafting the complaint; (2) $3,512.50 for engaging in discovery and attending nine court conferences; (3) $33,410 for briefing the motion for partial summary judgment and responding to Butt's cross-motions to amend and to dismiss; (4) $1,750 for conducting the first day of the two-day bench trial; (5) $5,580 for the initial fee application; and (6) $750 for their fee application reply. (Mietus Aff. ¶¶ 38, 44, 47; Pls.' Mem. at 2-3; ECF No. 114 at 3 n.3.) Plaintiffs also seek $2,895.00 solely against Cornerstone for the motion for default judgment (ECF Nos. 103-05; Pls.' Mem. at 3.) As to costs, plaintiffs request $1,344.91 for their reimbursable expenses, which include reimbursable mileage costs, Westlaw research costs, and mailing, printing, and postage costs, (Mietus Aff. ¶ 82 & Ex. C), in addition to taxable

costs in a Bill of Costs submitted on February 24, 2020 in the amount of $1,418.09, (ECF Nos. 101-02).

A. Attorneys' Fees

It is well settled that "[u]nder the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *see also* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)(a), 663(1). To calculate reasonable attorneys' fees, the Court uses the "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea*, 658 F.3d at 166 (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

The Supreme Court has held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [even if] the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436; *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("[W]e are mindful of the Supreme Court's observation that the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." (internal quotation marks omitted)).

1. Reasonable Hourly Rate

A "reasonable hourly rate" is "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). This Court follows the Second Circuit's "forum rule," which "generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Id.* at 290 (quoting *Simmons*, 575 F.3d at 174). In *Arbor Hill*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*,

489 U.S. 87 (1989). *See* 522 F.3d at 190. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19). "The burden rests with the prevailing party 'to justify the reasonableness of the requested rate.'" *Hugee*, 852 F. Supp. 2d at 298 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Courts in this district have concluded that $200 to $450 per hour is a reasonable hourly rate for partners, $200 to $325 per hour is reasonable for senior associates, and $100 to $200 per hour is reasonable for more junior associates. *See Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR) (PK), 2020 WL 5519200, at *7 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017) (citing *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014)); *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027 (JFB) (AKT), 2015 WL 1529772, at *5 (E.D.N.Y. Apr. 2, 2015) (collecting cases).

Ultimately, however, "in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the range of "reasonable" attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'" *Houston*, 234 F. Supp. 3d at 402 (quoting *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012)).

2. Hours Reasonably Expended

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Constr., Inc.*, No. 06-CV-7148 (GBD) (HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (first quoting *Hensley*, 461 U.S. at 434; then quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). Finally, when the Court makes this determination, it "does not play the role of an

uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

3. Application

a. Reasonable Hourly Rates

Plaintiffs seek an hourly rate for their attorneys as follows: (1) $400 per hour for managing partner Michael J. Borrelli; (2) $350 per hour for partner Alexander T. Coleman and $325 for the time he billed before he became a partner; (3) $200 per hour for associate Danielle E. Mietus; and (4) $250 per hour for other associates. (Pls.' Mem. at 7.) Borrelli & Associates has submitted records and an affidavit attesting to their legal experience and work on this matter. (*See* Mietus Aff. ¶¶ 52-80 & Ex. B.)

In light of the prevailing hourly rates in this district, and all the other factors set forth in *Arbor Hill*, the Court concludes that these requested rates are reasonable.

b. Reasonable Hours

The rates and hours requested are as follows:

| Name | Position | Rate | Hours | Total |
|------|----------|------|-------|-------|
| Michael J. Borrelli | Partner | $400 | .1 | $40.00 |
| Alexander T. Coleman | Partner | $350 | 13.8 | $4,830.00 |
| Alexander T. Coleman | Senior Counsel | $325 | 2.5 | $812.50 |
| Danielle E. Mietus | Associate | $200 | 37.7 | $7,540.00 |

| Dong Phuong V. Nguyen | Senior Associate | $250 | 131.6 | $32,900.00 |
| H. Joseph Cronen | Senior Associate | $250 | 5.7 | $1,425.00 |
| Peter J. Andrews | Senior Associate | $250 | 10.7 | $2,675.00 |
| Michael J. Palitz | Senior Associate | $250 | 5.2 | $1,300.00 |
| Total: | | | 207.3 | $51,522.50 |

(Mietus Aff. ¶ 46; ECF No. 114 at 3 n.3.)[1]

As a threshold matter, the Court concludes that the time records provided by Borrelli & Associates generally meet the requirements for an award of attorneys' fees. (Mietus Aff., Ex. A.) As noted above, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee*, 852 F. Supp. 2d at 298 (citing *Hensley*, 461 U.S. at 433). Thus, fee applications must be supported by contemporaneous records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148; *accord Fisher*, 948 F.3d at 600. Although some of the time entries that plaintiffs' counsel submitted are generalized, such as "File Review," the Court concludes that plaintiffs met their burden here.

With respect to the hours expended, counsel explains that they spent 694.6 hours on this matter, but only seek fees for 207.3 hours for certain tasks. (Mietus Aff. ¶ 46 & Ex. A; ECF No. 114 at 3 n.3.) Specifically, based on counsel's time records, they seek the following compensation, broken down by task:

---

[1] This chart reflects the additional 3 hours that plaintiffs requested for time spent preparing the reply for the instant motion. (*See* ECF No. 114 at 3 n.3.)

| Task | Hours | Fee |
|------|-------|-----|
| Complaint | 14.2 | $3,625.00 |
| Discovery Matters | 13.6 | $3,512.50 |
| Summary Judgment Motion | 130 | $33,410.00 |
| Trial | 7 | $1,750.00 |
| Initial Fees Motion | 26 | $5,580.00 |
| Default Judgment Motion | 13.5 | $2,895.00 |
| Fees Motion Reply | 3 | $750.00 |
| Total | 207.3 | $51,522.50 |

(Mietus Aff. Ex. A; ECF No. 114 at 3 n.3.)

Even with this voluntarily reduced lodestar figure, the Court finds the number of hours expended by Borrelli & Associates to be unreasonable because the hours requested are excessive given the nature of this particular case. *See Millea*, 658 F.3d at 167 ("[W]hile a district court may not adjust the lodestar based on [the novelty and complexity of a case], it may use [those factors] to determine the reasonable number of hours the case requires."). In its review of their billing records for the tasks for which compensation is sought, the Court finds various instances of excessive billing, even as to the lower revised hours submitted by plaintiffs' counsel, that warrant reduction. *See Kirsch*, 148 F.3d at 173 ("[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" (internal quotation marks omitted)).

For example, the Court finds that 14.2 hours spent on a relatively straightforward 13-page wage-and-hour complaint for a total of $3,625 is excessive. *See, e.g., Clarke v. Hudson Valley Fed. Credit Union*, No. 14-CV-5291 (KBF), 2016 WL 884667, at *8 (S.D.N.Y. Mar. 8, 2016) (finding that "12.9 hours worked at a rate of $400 per hour, for a total charge of $5,160 [for drafting the

complaint]—were excessive in light of the level of difficulty and complexity of this case" and reducing that portion of the fee by 60%).

In addition, the Court concludes that 130 hours spent on the motion for summary judgment and related briefing, for a total charge of $33,410, is excessive. Although plaintiffs also had to respond to Butt's *pro se* motions to amend and dismiss at that stage, none of the issues presented were particularly challenging. *See, e.g., Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 299 (E.D.N.Y. 1995) (reducing number of hours from 31.5 to 26.5 hours for a 14-page summary judgment motion that did not involve "complex or novel" issues); *see also DiFilippo*, 759 F.2d at 235 (stating that, although "the fact that a case is straightforward is not grounds to reduce a lodestar award . . . , the nature of the case does raise the issue of the propriety of the proposed lodestar amount"). This is in contrast to cases such as *Pastre v. Weber*, where the district court found that "128.75 hours spent between November 9, 1987 and April 18, 1988 preparing for and responding to defendants' summary judgment motion" was "fully warranted," given that the defendants' papers "comprised a 64-page opening memorandum of law, affidavits totalling [sic] 42 pages, a 22-page Local Civil Rule 3(g) statement (with an additional 482 pages of exhibits), and an 18-page reply brief." 800 F. Supp. 1120, 1126 (S.D.N.Y. 1991). In this case, the motion for partial summary judgment, and Butt's *pro se* cross-motions, simply did not warrant 130 hours of attorney work.

Moreover, as to the fee application itself, courts in this Circuit have recognized a prevailing party's right to recover fees for time spent on the motion for attorneys' fees itself. *See, e.g., Fink v. City of New York*, 154 F. Supp. 2d 403, 412 (E.D.N.Y. 2001).

Plaintiffs argue that their request for compensation for the initial fee application is reasonable because it constitutes 26 hours, or 12.7% of the total billable hours in this matter (amounting to a total charge of $5,580), and provide case law in which courts have permitted fees for such applications that were 8-24% of the total time for which fees were requested. (Pls.' Mem. at 16.) Courts in this Circuit, however, have also found that a reasonable number of hours to award for a motion for attorneys' fees is between 5 and 15 hours. *See Murray ex rel. Murray v. Mills*, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005); *see also Standish v. Fed. Express Corp. Long Term Disability Plan*, No. 15-CV-6226 (MAT), 2017 WL 874689, at *3 (W.D.N.Y. Mar. 6, 2017) (finding 4.4 hours reasonable); *Savino v. Computer Credit, Inc.*, 71 F. Supp. 2d 173, 178-79 (E.D.N.Y. 1999) (reducing the number of compensable hours from the claimed amount of 40 to a total of 5 for the plaintiff's second fee request); *see also Big R Food Warehouses*, 896 F. Supp. at 299 (deducting 7.5 hours and recommending an award of "12 hours for the preparation of attorney's fees [motion]" where "the issue involved was not complex, nor did it require extensive or exhaustive research" and "the attorneys recited the facts which have already been cited in previous court documents, reiterated the attorneys' personal background, and most importantly, did not state why the time spent was reasonable"). Under the circumstances of this particular case, the Court finds that the amount requested in connection with the preparation of the instant fee application is unreasonably high.

The Court also finds that 13.5 hours spent pursuing a default judgment against Cornerstone, amounting to a total of $2,895 in requested fees, is excessive. To be sure, the Court recognizes that prevailing plaintiffs are entitled to fees for work performed in connection with motions for default

judgment. *See, e.g.*, *Big R Food Warehouses*, 896 F. Supp. at 298. However, plaintiffs' submissions related to their request for a certificate of default and motion for default judgment did little more than rehash the background and procedural history of this case, much of which could have been gleaned from plaintiffs' own prior filings. (*See* ECF Nos. 97-98, 103-04.) Simply put, these submissions do not warrant 13.5 hours of legal services.

The Court's decision to reduce the requested fee award is further buttressed by the degree of success obtained by plaintiffs. As the Supreme Court has emphasized, the degree of success is a critical factor in the fee analysis. *Hensley*, 461 U.S. at 436. Here, plaintiffs originally sought: (1) for Seth Feuer, $33,143.03 in unpaid minimum wage and overtime compensation, $1,040 in unpaid spread-of-hours compensation, $34,183.03 in liquidated damages, and $2,700 in statutory damages under NYLL § 195; and (2) for Susann Feuer, $2,596.88 in unpaid minimum wages, $2,596.88 in liquidated damages, and $2,700 in statutory damages under NYLL § 195. (ECF No. 87 at 17-18.) However, the Court ultimately awarded a total of $5,224.68 for both plaintiffs. (ECF No. 95.)

The Court finds that the limited degree of success here warrants a reduction. Plaintiffs were not successful on a number of claims; in particular, the Court determined that "plaintiffs have not demonstrated that Susann Feuer is owed any unpaid minimum wages, and they failed to prove that either plaintiff is entitled to spread-of-hours pay or overtime compensation." *See Feuer*, 2020 WL 401787, at *12. The Court reached this conclusion in part because it credited Butt's testimony over plaintiffs' testimony and because plaintiffs failed to provide documentation to substantiate their claims. *Id.* at *6-7. As a result, plaintiffs' degree of success in this case was rather limited.

Plaintiffs' counsel argues that their work on these discrete tasks, such as the complaint and the summary judgment motion, "would [not] have been meaningfully different if Plaintiffs were only engaging in these tasks to pursue their successful claims, because all claims as it pertains to these tasks involved a common core of facts." (Pls.' Mem. at 13.) The Court disagrees. The nature of the attorneys' work would have been qualitatively different if the only claims being litigated were the portions of plaintiffs' claims that were ultimately successful—namely: (1) the failure to pay Seth Feuer $92 in wages for his first week of work; and (2) the violation of the wage statements and notice provisions under the NYLL as to Seth Feuer and Susan Feuer. For example, the discovery on those discrete issues would have been much narrower than the substantial discovery related to the broader, unsuccessful portions of the claim (that related to, *inter alia*, disputes over overtime issues during the entire summer). More importantly, it was uncontroverted on summary judgment that defendants had violated the wage statements and notice provisions under the NYLL.[2] Thus, no trial at all would have been necessary to establish liability for that claim. In terms of the calculation of the statutory damages for those claims, the disputes between the parties regarding the number of

weeks worked were extremely minor and would have required little, if any, time in discovery or at trial to resolve.[3] As to the other successful portion of the claims, even if a trial were necessary for plaintiffs to establish the failure to pay $92 in wages for Seth Feuer's first week of work, plaintiffs proved that fact through a series of contemporaneous emails that (combined with the relevant testimony on that discrete issue) would have taken little time to present at a bench trial. In short, the Court concludes that it would have taken materially fewer attorney hours (even as compared to the already-lowered amount sought by plaintiffs' counsel) to only prove the defendants' failure to pay Seth Feuer $92 in wages for his first week of work, and the violation of the wage statements and notice provisions under the NYLL as to Seth Feuer and Susann Feuer.

This case, therefore, differs from the situation in *Pereyra v. Fancy 57 Cleaners, Inc.*, where the plaintiff's only unsuccessful claim was his federal minimum wage claim, and where he prevailed on his remaining state and federal overtime claims and his state minimum wage and spread of hours claims. No. 11 CIV. 1522 (RJS), 2014 WL 12575718, at *8 (S.D.N.Y. Feb. 28, 2014). Because the single unsuccessful claim "did not add significant costs or efforts beyond what would have been expended on the other

---

[2] In fact, in their memorandum of law in support of their motion for partial summary judgment, plaintiffs explained: "Here, it is undisputed that Defendants failed to properly provide Plaintiffs with wage notices at hire in violation of NYLL 195(1) or with wage statements on each payday in violation of NYLL 195(3). Indeed, Defendant Butt admitted that Defendants never provided Plaintiffs with a wage notice at the time of their hire. Defendant Butt further admitted that Defendants never provided Plaintiffs with a wage statement on each payday and instead paid them in cash. Therefore, Plaintiffs are clearly entitled to statutory damages for Defendants' violations

of NYLL 195(1) and (3)." (ECF No. 56 at 10) (citations omitted).

[3] As discussed in the Court's January 24th Memorandum and Order: (1) Seth Feuer testified that he worked from May 3, 2014 through September 8, 2014, while Butt testified that he began working on May 6, 2014 and that his last day was on September 2, 2014; and (2) Susann Feuer testified that she worked from May 2, 2014 through September 6, 2014, while Butt testified that she started "participating" in Seth Feuer's work on May 15, 2014 and continued to do so until September 2, 2014. *See Feuer*, 2020 WL 401787, at *4, 6-7.

claims," the district court did not reduce the attorneys' fee. *Id.* In this case, although the unsuccessful spread-of-hours and overtime claims were based on the same set of records as the minimum wage claim, the latter claim was only partially successful for Seth Feuer (as to this first week of work), and the unsuccessful spread-of-hours and overtime claims were wholly distinct from the other, successful NYLL statutory violations. For Susann Feuer in particular, her only successful claims involved the NYLL statutory violations, which had nothing to do with the number of hours she did or did not work. In such situations, even where the time entries do not delineate work on the successful claims as compared to the unsuccessful claims, a court can in its discretion utilize an across-the-board cut. *See, e.g.*, *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 401 (E.D.N.Y. 2010) (applying a 30% fee reduction even though the unsuccessful claim had a significant amount of "overlap" because of "how much time [p]laintiff's counsel would have saved by not litigating [plaintiff's] unsuccessful claim").[4]

Based on the excessive hours and limited degree of success, the Court concludes that a 40% across-the-board reduction to the fees sought by Borrelli & Associates is warranted. *See, e.g.*, *Monette v. County of Nassau*, No. 11-CV-539 (JFB) (AKT), 2016 WL 4145798, at *6 (E.D.N.Y. Aug. 4, 2016) (explaining that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee

application'" (quoting *Kirsch*, 148 F.3d at 173)).

This level of reduction is consistent with discretionary decisions by other courts under similar circumstances and, in fact, some courts have imposed higher across-the-board reductions in more egregious circumstances. *See, e.g.*, *Raja v. Burns*, No. 19-CV-1328 (AMD) (RER), 2021 WL 1394638, at *8 (E.D.N.Y. Feb. 2, 2021) (recommending imposition of "a 40% across the board cut of all hours expended on the litigation" because, among other things, plaintiff achieved limited success on his claims), *report and recommendation adopted*, 2021 WL 1099931 (E.D.N.Y. Mar. 23, 2021); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorneys' requested fee award by 40% due to duplication of work and "the insufficient descriptions of some of the work done and the necessity for such work"); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, No. 08 CIV. 442 (TPG) (FM), 2013 WL 3322249, at *6, 8 (S.D.N.Y. July 2, 2013) (reducing fee request by 75% due to "numerous inefficiencies and instances of excessive billing" and the "relative simplicity of the matters in dispute"), *aff'd*, 679 F. App'x 33 (2d Cir. 2017); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2010 WL 2772493, at *6 (E.D.N.Y. June 21, 2010) (reducing fees by two-thirds due to excessive billing), *report and recommendation adopted*, 2010 WL 2772342 (E.D.N.Y. July 12, 2010); *Falleson v. Paul T. Freund Corp.*, 736 F. Supp. 2d 673, 676 (W.D.N.Y. 2010) (reducing hours by 60% because "the number of hours expended was excessive,

---

[4] The Court recognizes that "the simple disproportion between a plaintiff's recovery and the fee applied for is not a proper basis for a reduction in an otherwise reasonable fee," *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009); *see also Millea*, 658 F.3d at 169 (holding that "the district

court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded"), and emphasizes that such a disproportion was not considered by the Court when deciding this motion.

particularly in light of the fact that this matter never reached the point of collective action certification and because the results achieved are dramatically disproportionate to the fees requested"); *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05-CIV-10100 (KMW) (KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing fee award by 75% because the defendant had defaulted).

In reducing counsel's request, the Court does not suggest that counsel was ineffective in any respect; to the contrary, the Court recognizes the hard, competent work performed by plaintiffs' attorneys throughout the case, as reflected in the billing entries. The Court further appreciates that counsel significantly lowered the requested fee amount (as compared to the total hours expended) prior to submitting the motion and believes that counsel should be commended for that voluntary action. However, notwithstanding counsel's expenditures of time and the voluntary reduction of the fees being sought, the Court, having presided over the case and the trial, concludes that this 40% additional reduction is necessary in order for the amount to constitute a reasonable fee under the particular circumstances of this case.

Accordingly, with the 40% reduction, the Court calculates the lodestar to be $30,913.50. The Court sees no reason to depart further from this lodestar figure in this case. *See, e.g., Perdue*, 559 U.S. at 553 (explaining that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fees).

Plaintiffs are therefore awarded—and defendants are jointly and severally liable for—$29,176.50 in fees attributable to work related to drafting the complaint, discovery

matters and court conferences, summary judgment and related briefing, the bench trial, and the instant fees motion. Additionally, plaintiffs are awarded $1,737.00 in fees attributable to work performed in connection with the motion for default judgment, for which only Cornerstone is liable.

B. Costs

As noted above, plaintiffs seek $1,344.91 in reimbursable costs. (Mietus Aff. ¶ 82 & Ex. C.) Plaintiffs have also separately submitted a request for taxable costs in the amount of $1,418.09 in a Bill of Costs. (ECF Nos. 101-02).

"Pursuant to 28 U.S.C. § 1920 and Local Rule 54.1, taxable costs, such as filing and subpoena fees as well as monies expended for transcripts, printing, copying, and witnesses are shifted to the losing party." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 211-12 (E.D.N.Y. 2007). Moreover, "[n]on-taxable costs also are shifted to the losing party in a case like this where a statute[,] [such as the FLSA and NYLL,[5]] provides for the shifting of attorneys' fees[.]" *Id.* at 212. Thus, in such circumstances, "a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "Such reimbursable costs 'include filing fees, process servers, postage, travel, and photocopying,' as well as legal research costs." *Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. M.C. Landscape Grp., Inc.*, No. 12-CV-00834 (CBA) (VMS), 2016 WL 6998640, at *8 (E.D.N.Y. Aug. 25, 2016) (quoting *Capone v. Patchogue-Medford Union Free Sch. Dist.*,

---

[5]   *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)(a), 663(1).

No. 04-CV-2947 (JS) (MLO), 2011 WL 743573, at *5 (E.D.N.Y. Feb. 23, 2011)), *report and recommendation adopted*, 2016 WL 7017336 (E.D.N.Y. Nov. 30, 2016). The moving party "bears the burden of adequately documenting and itemizing the costs requested." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM) (SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013) (internal quotation marks omitted).   In particular, "[p]laintiffs must submit receipts, invoices, or other evidence to support the costs requested." *McFarlane v. Harry's Nurses Registry*, 17-CV-6350 (PKC) (PK), 2021 WL 2646327, at *5 (E.D.N.Y. June 28, 2021) (internal quotation marks omitted).

Here, plaintiffs submitted a Bill of Costs, requesting that the Clerk of Court tax their costs in the amount of $1,418.09, consisting of $413.70 in fees to the Clerk of Court, $150.00 in fees associated with service of the summons and complaint, $731.50 in fees for printed or electronically recorded transcripts necessarily obtained for use in this case, $100.39 for witness fees, and $22.50 for docket fees. (*See* ECF Nos. 101-02.)  In support of the Bill of Costs, plaintiffs submitted an internal statement of costs, as well as certain receipts and invoices, to substantiate their request. (*See* ECF Nos. 102-1, 102-2.)  Upon reviewing the record, the Court finds these costs to be reasonable and therefore concludes that the requested $1,418.09 is properly taxable.

As to the requested non-taxable—or reimbursable—costs, plaintiffs request $1,344.91, which includes $454.75 in mileage costs, $457.40 in legal research costs, and $432.76 in mailing, printing, and postage costs. (Mietus Aff. ¶ 82; Pls.' Mem. at 18.)  To substantiate these costs, plaintiffs submitted, along with their affidavit, a billing statement as well as certain receipts and invoices. (Mietus Aff. Exs. C & D.)  They

explain, however, that they do not have corresponding receipts for "postage, certain travel expense for *inter alia*, court conferences, printing and copying, [or] Westlaw legal research." (Mietus Aff. ¶ 85.)  As with the taxable costs, after reviewing the record, the Court finds the request for reimbursable costs to be allowable, reasonable, and sufficiently documented, and therefore will award plaintiffs $1,344.91 in reimbursable, non-taxable costs as requested.

Together, the awarded taxable and non-taxable costs amount to $2,763.00.

III. CONCLUSION

For the reasons set forth herein, the Court, in the exercise of its discretion, awards Borrelli & Associates $29,176.50 in attorneys' fees for which defendants are jointly and severally liable, and an additional $1,737.00 in attorneys' fees for which Cornerstone alone is liable.  In addition, the Court awards Borrelli & Associates $2,763.00 in costs, which amount includes both taxable and non-taxable costs, for which defendants are jointly and severally liable. Finally, the Clerk of Court shall mail a copy of this order to defendants.

SO ORDERED.
/s/Joseph F. Bianco

JOSEPH F. BIANCO
United States Circuit Judge
(Sitting by Designation)

Dated: October 20, 2021
       Central Islip, NY

* * *

Plaintiffs are represented by Alexander T. Coleman, Borrelli & Associates, P.L.L.C., 910 Franklin Avenue, Suite 200, Garden City, NY 11530.

Defendant Naeem Butt proceeds *pro se*, 52 Longview Road, Southampton, NY 11968. Defendant Cornerstone Hotels Corp. is unrepresented.